UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO. 25-61374-CIV-SINGHAL

HERON ENTERPRISES, LLC,

    Plaintiff,

v.

STARBOARD YACHT GROUP LLC; and
CHARLES J. STRATMANN,

    Defendants.
_____/

## AMENDED COMPLAINT

Plaintiff, Heron Enterprises, LLC ("Heron" or "Plaintiff"), hereby files this Amended Complaint against Defendants, Starboard Yacht Group LLC ("Starboard") and Charles J. Stratmann, individually (collectively, "Defendants"). In support thereof, Plaintiff alleges as follows:

### PRELIMINARY STATEMENT

1.    This is a civil action for breach of contract, fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, violation of the Florida Deceptive and Unfair Trade Practices Act, violation of 18 U.S.C. § 1962(c), and conversion.

### PARTIES, JURISDICTION, AND VENUE

2.    This Court has admiralty jurisdiction pursuant to 28 USC § 1333, because this action arises from a maritime contract for services to be performed on a vessel operating in navigable waters. This Court has supplemental jurisdiction over related state law claims pursuant to 28 USC § 1367.

1

3. Heron is a Delaware limited liability company, with its principal place of business in Wilmington, Delaware. The sole member of Plaintiff is Patrick Sands, who is a citizen of Texas, domiciled in Texas.

4. Starboard is a Florida limited liability company, with its principal place of business in Dania Beach, Florida. Upon information and belief, Charles J. Stratmann is the sole member of Starboard and is domiciled in Florida.

5. At all times material hereto, upon information and belief, Charles J. Stratmann is and was an individual domiciled in Broward County, Florida and is *sui juris*.

6. Pursuant to 28 U.S. Code § 1391, venue is proper in the Southern District of Florida, because the causes of action alleged herein accrued in Broward County, Florida and at least one of the defendants resides in Broward County, Florida.

**GENERAL ALLEGATIONS**

7. On or about September 13, 2024, Heron engaged Starboard, an authorized dealer of Humphree marine stabilization systems, to assess and install a Humphree zero-speed stabilizing system on the motor yacht Heron, a 139-foot Abeking Rasmussen (the "Vessel").

8. The Vessel is a documented vessel of the United States that regularly operates in navigable waters.

9. At all relevant times, the Vessel was docked at Safe Harbor Lauderdale Marine Center ("SHLMC"), a marine facility with direct access to navigable waters.

10. Upon information and belief, Charles J. Stratmann is Starboard's sole member.

11. Charles J. Stratmann met with representatives of Heron to evaluate the boat and provide an estimate for the installation.

12. Mr. Stratmann indicated that the project could be completed within eight to ten weeks from receipt of deposit.

13. Thereafter, in October 2024, Starboard provided a written estimate and "Buyers Order" for the project, which included equipment, labor, and installation costs and sought a $362,183.00 deposit. *See* **Exhibit 1**.

14. Heron wired the full amount to Starboard in reliance on its representation that the funds would be used to promptly purchase equipment and begin installation.

15. In November 2024, Starboard issued two additional invoices in the total amount of $187,000. *See* **Exhibit 2**.

16. Heron paid the full amount of the November 2024 invoice as well.

17. Despite repeated assurances to the contrary, Heron later discovered that Starboard had not paid Humphree for the equipment, and no purchase orders had been submitted for the vast majority of the necessary parts.

18. In fact, Plaintiff learned that Starboard's access to SHLMC had been revoked with respect to new projects such as Heron's in June 2024 due to unrelated billing disputes.

19. Starboard and Mr. Stratmann never revealed that Starboard was banned from SHLMC during the course of negotiations even though the ban was in effect at all relevant times and Starboard and Mr. Stratmann were aware of it.

20. In other words, Starboard and Mr. Stratmann withheld the material fact that Starboard was banned from SHLMC while negotiating and entering into an agreement for Starboard to perform major work and the Humphree installation on the yacht at SHLMC.

21. Starboard and Mr. Stratmann misrepresented Starboard's ability to perform the work and repeatedly delayed or failed to appear for scheduled work, causing significant project delays and financial harm.

22. Starboard and Mr. Stratmann later falsely indicated multiple times that Starboard had executed a settlement with SHLMC and indicated, for example, that access would be restored "today." Those representations were untrue. Upon information and belief, Starboard and Mr. Stratmann made these representations with the knowledge that they were false and with the intent that Plaintiff would rely on them.

23. Starboard performed only minimal work including removal of the existing stabilizers and outsourced hot work to Advanced Mechanical Enterprises, Inc. Starboard substantially failed to perform the services contemplated by the parties' agreement, including the procurement of necessary parts and installation of the Humphree stabilization system.

24. Upon information and belief, Starboard's license as an authorized dealer with Humphree has since been revoked as a result of it failing to use the funds paid to it to purchase the necessary parts and complete the work on the yacht as agreed to by the parties.

25. Heron demanded the return of its funds to directly purchase the equipment and have a different vendor perform the work that Starboard was supposed to complete, but Starboard refused.

26. All conditions precedent to asserting claims herein have been performed or waived.

27. To date, Starboard has failed to return the funds or complete the contracted work.

### COUNT I - BREACH OF MARITIME CONTRACT
### (Against Starboard)

28. Heron restates the allegations in the preceding paragraphs as if fully set forth herein.

29. This cause of action is brought pursuant to 28 U.S.C. § 1333 under general maritime law in connection with a claim for breach of a contract for services performed on a vessel in navigable waters.

30. The nature and character of the contract is maritime, because it relates to maintenance and improvement performed on a vessel that regularly operates in navigable waters. The installation of the stabilizer directly related to the vessel's navigation and seaworthiness in various sea conditions and serves maritime commerce by enhancing the vessel's operational capabilities.

31. Heron entered into an valid and enforceable oral agreement with Starboard whereby Starboard would procure and install a Humphree stabilization system within eight to ten weeks, in exchange for $549,183.00.

32. The parties exchanged a series of emails and invoices and reached agreement as to all essential terms of the agreement. *See* Ex. 1, 2. In total, Heron paid $549,183.00 in exchange for Starboard's agreement to acquire the necessary parts and perform the installation within eight to ten weeks.

33. Starboard materially breached the agreement by substantially failing to fulfill its obligations thereunder. Starboard did not purchase the vast majority of the essential parts, let alone install the Humphree stabilizing system as agreed.

34. Further, under Florida law, there is an implied promise of good faith and fair dealing that exists in any contract.

35. The implied covenant of good faith and fair dealing means that neither party will do anything to interfere with the right of the other party to the contract to receive the contract's benefits.

36. Starboard failed to perform in good faith under the contract and made multiple false statements to representatives of Heron.

37. As a direct result of Starboard's breach, Heron has suffered damages in excess of $549,183.00.

WHEREFORE, Heron requests an award of damages in its favor against Starboard including, but not limited to, compensatory damages, lost profits, loss of use and enjoyment, and any other relief this Court determines is just and proper.

### COUNT II – FRAUDULENT MISREPRESENTATION AND CONCEALMENT
### (Against All Defendants)

38. Plaintiff restates the allegations in the paragraphs 1 through 27 as if fully set forth herein.

39. On September 13, 2024, Mr. Stratmann, on behalf of Starboard, represented that Starboard was willing and able to perform the installation within eight to ten weeks.

40. In connection with this discussion, Mr. Stratmann, on behalf of Starboard, concealed and failed to disclose the fact that Starboard was banned from SHLMC, the shipyard where it agreed to perform services in connection with the installation project.

41. Mr. Stratmann was aware that Starboard was banned from SHLMC and was aware that the yacht was located at SHLMC.

42. Furthermore, Defendants had a duty to disclose complete and accurate information about Starboard's ban from SHLMC to Plaintiff, because Defendants conveyed only partial and incomplete information to Plaintiff when negotiating and entering into the agreement to perform the installation. This partial and incomplete information was misleading, because Starboard agreed to perform installation services within eight to ten weeks, with the knowledge that Starboard was

6

banned from SHLMC. Defendants had a duty to correct this false impression by providing complete and accurate information.

43. The fact that Starboard was banned from SHLMC was material, because a reasonable person would not have entered into the transaction had Defendants disclosed it.

44. Defendants knew or should have known that he should have disclosed the material fact that Starboard was banned from SHLMC in connection with his negotiations for this transaction.

45. Heron relied on these misrepresentations to its detriment by wiring funds for purposes of Starboard's work on the project.

46. Defendants withheld, concealed, and made misleading partial representations with the intent to induce Heron to wire the funds.

47. Mr. Stratmann, on behalf of Starboard, reaffirmed these false and misleading assurances on multiple occasions, including by falsely stating that personnel would come to SHLMC to perform work on the project in the imminent future and that parts had been ordered when they had not been.

48. Mr. Stratmann exercised complete dominion over Starboard with respect to this transaction.

49. Mr. Stratmann used the corporate entity as a vehicle for fraud.

50. Upon information and belief, Starboard was undercapitalized, so Mr. Stratmann misappropriated funds used for Plaintiff's project to pay for unrelated debts, liabilities, or operating expenses separate and apart from the stated purpose for which the funds were wired. Upon information and belief, Mr. Stratmann commingled funds and failed to observe corporate formalities in the course of these transactions.

51. Defendants engaged in willful and wanton misconduct and intentionally induced Plaintiff to wire funds with the intention to misappropriate the funds for their own benefit.

52. As a result, Plaintiff has suffered damages and is entitled to compensatory damages in excess of $549,183.00.

53. Defendants' fraudulent concealment, inducing Plaintiff's reliance, was the direct and proximate cause of Plaintiff's damages.

WHEREFORE, Heron requests an award of damages in its favor against Defendants including, but not limited to, compensatory damages, lost profits, punitive damages, and any other relief this Court determines is just and proper.

## COUNT III – NEGLIGENT MISREPRESENTATION
### (Against All Defendants)

54. Plaintiff restates the allegations in paragraphs 1 through 27 as if fully set forth herein.

55. Mr. Stratmann, on behalf of Starboard, knowingly misrepresented that Starboard would perform services on the installation project imminently and that Starboard would promptly order and pay for the Humphree equipment to begin the project.

56. At times, Mr. Stratmann, on behalf of Starboard, also misrepresented that parts had already been ordered when, in fact, they had not been.

57. Upon information and belief, Defendants knew or should have known that these representations were false and/or had no intention of fulfilling these representations.

58. For instance, Mr. Stratmann, on behalf of Starboard, stated, "Parts needed are with welding team and arrive[d] last week."

59. Plaintiff subsequently asked Humphree directly and determined this representation to be false. On February 24, 2025, Humphree stated that Starboard had not paid for any of the fins,

actuators, or other associated parts under the agreement, except for certain rings, of a relatively minimal value.

60. Defendants reaffirmed these false assurances on multiple occasions, including falsely stating that parts had been ordered when they had not been.

61. These misrepresentations were material and intended to induce Heron to act.

62. Plaintiff relied on these misrepresentations to its detriment by foregoing other alternative options to accomplish the work needed. Some of Starboard's work needed to be accomplished before painting and hot work was scheduled to begin, but given Starboard's misleading assurances that it was on track, Plaintiff decided not to pursue alternatives within the necessary timeframe.

63. Upon information and belief, Mr. Stratmann used Starboard as a mere instrumentality.

64. Mr. Stratmann used the corporate entity as a vehicle for fraud or an improper purpose.

65. Upon information and belief, Defendants misappropriated Plaintiff's funds.

66. As a result, Heron has suffered damages.

WHEREFORE, Heron requests an award of damages in its favor against Defendants including, but not limited to, compensatory damages, lost profits, and any other relief this Court determines is just and proper.

### COUNT IV – UNJUST ENRICHMENT
### (Against Starboard)

67. Plaintiff restates the allegations in paragraphs 1 through 27 as if fully set forth herein.

68. Plaintiff alleges in the alternative to its breach of contract claim that it is entitled to recover under the doctrine of unjust enrichment based on the transactions and occurrences at issue herein.

69. Plaintiff conferred a benefit upon Starboard by paying $549,183.00.

70. Starboard knowingly accepted and retained the benefit without providing the promised services.

71. Plaintiff reasonably expected Starboard to perform the services, given the parties' conversations and Defendants' repeated assurances that performance was underway.

72. It would be inequitable for Starboard to retain these funds.

WHEREFORE Heron requests an award of damages in its favor against Starboard including, but not limited to, compensatory damages, special damages, lost profits, and any other relief this Court determines is just and proper.

### COUNT V – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
**(Against Starboard)**

73. Plaintiff restates the allegations in paragraphs 1 through 27 as if fully set forth herein.

74. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq. ("FDUTPA").

75. The stated purpose of the Act is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

76. Plaintiff is a "consumer," and the transactions at issue in this Complaint constitute "trade or commerce" as defined by Fla. Stat. § 501.203(7) and (8).

10

77. Starboard violated and continues to violate the Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its business in violation of Florida Statute § 501.204.

78. Starboard has engaged in a pattern and practice of entering into agreements to perform services including the installation of stabilizers on yachts for a specified fee but failing to perform the services after being paid.

79. Upon information and belief, Starboard then misappropriates the funds paid for the project for its own benefit.

80. A reasonable consumer would believe that Starboard, as the authorized Humphree dealer at the time, would perform the installation as agreed.

81. Plaintiff had no way of reasonably knowing that despite the parties' agreement, Starboard would completely fail to perform. Thus, Plaintiff could not have reasonably avoided the injury it suffered.

82. As a direct and proximate cause of the violations herein, Plaintiff suffered injury in fact and actual damages as a result of Starboard's unlawful, unfair, and fraudulent conduct. Accordingly, Plaintiff is entitled to actual damages, including but not limited to the amount it paid for services that were never rendered and its costs incurred in bringing this action.

WHEREFORE Heron requests an award of its actual damages against Starboard, and any other relief this Court determines is just and proper.

**COUNT VI – VIOLATION OF CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (18 U.S.C. § 1962(c))**
**(Against All Defendants)**

83. Plaintiff restates the allegations in paragraphs 1 through 27 as if fully set forth herein.

84. This cause of action arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.

85. At all relevant times, Defendants Starboard and Stratmann were "persons" within the meaning of 18 U.S.C. § 1961(3).

86. The "enterprise" for purposes of RICO consists of Starboard, Stratmann, and other individuals and entities associated in fact, including but not limited to employees, contractors, and business associates who participated in the scheme described herein. This enterprise constitutes an ongoing organization with a common purpose of defrauding yacht owners through false promises of marine stabilization system installations and other marine services, and this enterprise affects interstate commerce.

87. Upon information and belief, Defendants have engaged in similar conduct repeatedly and misappropriated funds from various projects to pay off unrelated debts and liabilities.

88. Stratmann, through his position as the sole member and controlling person of Starboard, conducted and participated in the conduct of the enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

89. Defendants engaged in a pattern of racketeering activity consisting of numerous and repeated violations of federal wire fraud (18 U.S.C. § 1343), through the scheme to defraud yacht owners including Plaintiff.

90. Specifically, Defendants engaged in a scheme to defraud Plaintiff by:
   a. Knowingly making material misrepresentations to Plaintiff that Starboard would purchase and install a Humphree stabilization system on the yacht when Defendants had no intention of doing so;

b. Knowingly failing to disclose that Starboard was banned from taking on new projects at SHLMC at all material times;

c. Collecting $549,183.00 from Plaintiff under false pretenses;

d. Knowingly misrepresenting that parts had been ordered and paid for when they had not;

e. Knowingly misrepresenting that Starboard had executed a settlement with SHLMC that would enable them to perform the promised work when no such settlement existed; and

f. Converting the funds provided by Plaintiff for Defendants' own use rather than purchasing the required equipment and performing the promised services.

91. In furtherance of this scheme, Defendants, on multiple occasions, transmitted or caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, including but not limited to electronic communications, emails, text messages, and electronic funds transfers, in violation of 18 U.S.C. § 1343.

92. The predicate acts of wire fraud are related in that they had the same purpose, results, participants, victims, and methods of commission.

93. Defendants' conduct establishes a pattern of criminal activity including multiple predicate acts within the past year.

94. The pattern of racketeering activity poses a threat of continued criminal conduct extending indefinitely into the future, as Defendants appear to have established an ongoing business model involving the collection of substantial upfront payments for marine services that they do not intend to perform.

95. As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business and property, including but not limited to the loss of $549,183.00 paid to Defendants; additional costs incurred to procure alternative services for the installation of the stabilization system; lost use of the yacht due to extended periods of downtime resulting from Defendants' fraudulent scheme; and lost business opportunities due to the yacht's unavailability.

96. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover threefold the damages sustained, plus costs and reasonable attorneys' fees incurred in bringing this action.

WHEREFORE, Plaintiff requests judgment against Defendants, jointly and severally, including treble damages in an amount to be determined at trial, but not less than $1,647,549.00; costs of suit and reasonable attorneys' fees incurred by reason of Defendants' violations of 18 U.S.C. § 1962; pre-judgment and post-judgment interest as permitted by law; and such other and further relief as the Court deems just and proper.

## COUNT VII – CONVERSION
### (Against All Defendants)

97. Plaintiff restates the allegations in paragraphs 1 through 27 as if fully set forth herein.

98. This cause of action is pled in the alternative to Plaintiff's breach of contract claim.

99. Plaintiff delivered to Defendants the sum of $549,183.00 for the specific purpose of purchasing Humphree stabilization equipment and installing that equipment on Plaintiff's yacht.

100. These funds were entrusted to Defendants for the limited and specific purpose of procuring the stabilization equipment and performing the installation services that were the subject of the parties' discussions.

101. Defendants exercised dominion and control over these funds in a manner inconsistent with Plaintiff's ownership rights by:

   a. Failing to use the funds to purchase the agreed-upon equipment from Humphree;

   b. Diverting the funds for purposes other than those authorized by Plaintiff;

   c. Refusing to return the funds to Plaintiff despite Plaintiff's demands; and

   d. Converting the funds to their own use.

102. Defendants' misappropriation of these funds was unauthorized and wrongful, exceeding any authority granted by Plaintiff.

103. Although Plaintiff demanded the return of its funds, Defendants have refused to return them, thereby depriving Plaintiff of its property.

104. As a direct and proximate result of Defendants' conversion, Plaintiff has suffered damages in an amount not less than $549,183.00.

105. Defendants' conversion of Plaintiff's funds was undertaken willfully, wantonly, and with reckless disregard for Plaintiff's rights, warranting the imposition of punitive damages.

WHEREFORE, Plaintiff requests judgment against Defendants, jointly and severally, for compensatory damages in the amount of $549,183.00, punitive damages, prejudgment interest, costs, and such other relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury on all issues so triable.

Dated this 21st day of July, 2025.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

/s/ Christina M. Schwing
Christina M. Schwing
Florida Bar No. 11420

christina.schwing@hklaw.com
Emily R. McWey
Florida Bar No. 1030931
emily.mcwey@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, FL 32202
Phone: (904) 353-2000
Facsimile: (904) 358-1872

***Attorneys for Heron Enterprises, LLC***