# Composite
# Exhibit "G"

**IN THE COUNTY COURT IN AND FOR BROWARD COUNTY, FLORIDA**

**CASE NO:**

SHM LMC, LLC,

Plaintiff,

vs.

STARBOARD YACHT GROUP, LLC,

Defendant.

/

**COMPLAINT FOR EVICTION**
**(Pursuant to Florida Statutes Section 51.011 and Chapter 83)**

Plaintiff, SHM LMC, LLC ("Plaintiff"), sues Defendant, STARBOARD YACHT GROUP, LLC ("Defendant" or "Tenant"), and alleges as follows:

**VENUE AND JURISDICTION**

1. This is an action for possession of non-residential real property located in Broward County, Florida, pursuant to Chapter 83 of the Florida Statutes and Section 51.011 of the Florida Statutes.

2. Plaintiff, SHM LMC, LLC, is a Delaware limited liability company authorized to conduct business is Broward County, Florida.

3. Defendant, Starboard Yacht Group, LLC, is a Florida limited liability company conducting business in Broward County, Florida.

**LEASE**

4. Plaintiff owns the following described real property located Broward County, Florida: 2019 S.W. 20th Street, Suite 215, Fort Lauderdale, Florida 33315 (the "Premises").

5. On or about July 1, 2023, Plaintiff entered into a Commercial Lease Agreement for the Premises (the "Lease") with Defendant. A copy of the Lease, including all amendments and exhibits, is attached hereto as **Exhibit "A."**

6. Pursuant to Section 20 of the Lease, Plaintiff has the following termination right:

> **Landlord's Right to Cancel**. Notwithstanding anything herein to the contrary, Landlord may, at Landlord's option, cancel and terminate this Lease at any time, for any reason or no reason at all and without penalty for fee, upon 30 days' written notice to Tenant.

7. In accordance with the Lease, Defendant took possession of the Premises.

8. On or about December 8, 2023, Plaintiff served Defendant with a termination notice pursuant to Section 20 of the Lease exercising its unequivocal right to terminate (the "Termination Notice"). A copy of the Termination Notice is attached hereto as **Exhibit "B."**

9. The Termination Notice advised Defendant that the Lease shall be terminated on January 7, 2024, and that on or prior to that date, Defendant was required to vacate and surrender the Premises to Plaintiff with all personal property removed from the Premises.

10. Pursuant to the Termination Notice, the Lease did, in fact, terminate on January 7, 2024, and Defendant no longer has a possessory interest in the Premises.

11. However, to date, Defendant has failed to voluntarily vacate and surrender possession of the Premises to Plaintiff; therefore, Defendant is illegally occupying the Premises as a holdover tenant.

12. Pursuant to Section 18(H) of the Lease, Defendant is obligated to pay the reasonable attorneys' fees and costs incurred by Plaintiff to enforce its rights under the Lease.

13. Plaintiff has retained the undersigned attorneys to whom Plaintiff is obligated to pay a reasonable fee for services, to enforce its rights under the Lease.

14. Plaintiff has performed each and every obligation arising under the Lease.

15. All conditions precedent to the maintenance of this action have occurred or have been waived or excused.

16. Plaintiff hereby reserves all other rights and remedies that it has under the Lease, including but not limited to, its right to enforce any other defaults by Defendant pursuant the Lease and/or right to seek damages against Defendant and/or any other guarantor, person or entity.

WHEREFORE, Plaintiff, SHM LMC, LLC, demands judgment against Defendant, STARBOARD YACHT GROUP, LLC, for:

a. possession of the Premises;

b. Plaintiff's reasonable attorneys' fees and costs; and

c. for such and other further relief as this Court deems just and proper.

Dated: March 21, 2024

Respectfully submitted,

**AKERMAN LLP**
Three Brickell City Centre
98 S.E. 7th Street, Suite 1100
Miami, FL 33131
Phone: (305) 374-5600
Fax: (305) 374-5095
Email: james.bombulie@akerman.com
Secondary email: cary.gonzalez@akerman.com
Email: erica.gomer@akerman.com
Secondary Email: deborah.karlson@akerman.com

By: */s/ James A. Bombulie*
James A. Bombulie, Esq.
Florida Bar Number: 0025749
Erica Gomer, Esq.
Florida Bar Number: 0118691





NOT AN OFFICIAL COPY

# EXHIBIT A

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

# COMMERCIAL LEASE AGREEMENT

This **Commercial Lease Agreement** (this "Lease") is entered by Landlord and Tenant effective as of July 1, 2023. In consideration of the rents to be paid and the covenants and agreements to be performed by Tenant, Landlord hereby leases to Tenant and Tenant hereby leases from Landlord, the Premises described below on the following terms and conditions:

1. **Basic Lease Terms.**

Landlord: SHM LMC, LLC, a Delaware limited liability company.

Tenant: Starboard Yacht Group, LLC, a Florida limited liability company.

Marina: The marina known as Safe Harbor Lauderdale Marine Center, located at 2029 SW 20th Street, Fort Lauderdale, FL 33315, upon which the Premises is located.

Premises: Suite 215, comprising of approximately 528 square feet, in the building located at 2019 SW 20th Street, Fort Lauderdale, FL 33315 (the "Building"). The floor plan of the Premises is shown on the attached Exhibit A.

Commencement Date: July 1, 2023.

Expiration Date: June 30, 2024.

Term: Approximately twelve (12) months, beginning on the Commencement Date and ending on the Expiration Date (the "Initial Term"), unless earlier terminated as provided in this Lease.

Base Rent:

| *Period* | *Monthly Installment* |
|---|---|
| 07/01/2023 – 12/31/2023 | $2,182.74 (comprising of $2,049.52 of base rent *plus* $133.22 of sales tax) |
| 01/01/2024 – 06/30/2024 | $2,259.13 (comprising of $2,121.25 of base rent *plus* $137.88 of sales tax) |

Landlord Utilities: (i) water; (ii) 120-volt electricity for office purposes; and (iii) trash dumpster.

Electricity Reimbursement.

| *Period* | *Monthly Installment* |
|---|---|
| 07/01/2023 – 12/31/2023 | $55.54 |
| 01/01/2024 – 06/30/2024 | $57.49 |

Security Deposit: N/A.

Trade Name (d/b/a): N/A.

Golf Cart(s): Tenant is allowed one (1) golf cart on the property. Any additional golf carts will incur a fee of $200.00 per golf cart, per month. Additional golf carts are subject to Landlord's sole discretion and approval.

Permitted Use: Office space.

Broker: N/A.

Landlord Address: SHM Lauderdale Marine Center
Attn: Lazaro Roig, Marina Manager
2029 SW 20th Street
Fort Lauderdale, FL 33315
Email: lroig@shmarinas.com

with a copy to:
Safe Harbor Marinas
Attn: Lease Administrator
14785 Preston Rd, Suite 975
Dallas, TX 75254

Tenant Address: 850 NE 3rd Street, Suite 208
Dania Beach, FL 33004
Email: jake@starboardyacht.com

2. **Rent.**

A. Base Rent. During the Term, Tenant agrees to pay the Base Rent specified in Section 1 to Landlord in monthly installments in advance without notice, demand, setoff or deduction **by ACH bank draft** [*please complete ACH Authorization form attached as Exhibit B*] or as otherwise directed by Landlord. The first monthly installment of Base Rent shall be due upon Tenant's execution of this Lease and, thereafter, each monthly installment shall be due on the 1st day of each calendar month. The Base Rent for any partial calendar month at the start or end of the Term shall be prorated and such prorated installment shall be payable at the same time as the first or last (as applicable) full monthly installment of Base Rent. Notwithstanding anything herein to contrary, in the event that the applicable sales tax changes, the parties agree that the Base Rent shall be modified to reflect the correct sales tax.

B. Additional Rent. In addition to Base Rent, Tenant shall pay Landlord the following ("Additional Rent"):

i. monthly Electricity Reimbursement to reimburse Landlord for electricity costs paid by Landlord;

ii. any sum owed for separately metered utilities or sub-metered utilities which the applicable utility directly bills Landlord but the cost of which are Tenant's responsibility under this Lease;

iii. $25/key for any additional or lost keys; and

iv. any other sums owed by Tenant pursuant to the terms of this Lease or otherwise arising in connection with Tenant's occupancy of the Premises.

All sums (including Additional Rent) other than the Base Rent and Percentage Rent payable by Tenant to Landlord under this Lease shall be due and payable upon 20 days written demand by Landlord, and Tenant's obligation to pay such sums shall survive the expiration or earlier termination of this Lease. The obligations of Tenant to pay Base Rent, Additional Rent, and other sums to Landlord and the obligations of Landlord under this Lease are independent obligations. Tenant shall pay and be liable for all rental, sales and use taxes or other similar taxes, if any, levied or imposed on Rent payments by any city, county, parish, state or other governmental body. Such payments shall be in addition to all other payments required to be paid to Landlord by Tenant under the terms of this Lease. Any such payment shall be paid to Landlord concurrently with the payment of Base Rent or Additional Rent upon which such tax is based. Tenant shall not do any act which may make void or voidable any insurance on the Premises or Marina; and, in the event Tenant's use of the Premises shall result in an increase in Landlord's insurance premiums, Tenant shall pay to Landlord upon demand, as Additional Rent, an amount equal to such increase in insurance.

C. Property Taxes. Landlord shall pay, prior to delinquency, all general real estate taxes and installments of special assessments coming due on the Premises during the Term. Tenant shall be responsible for paying all personal property taxes with respect to Tenant's personal property at the Premises. Landlord shall have the sole right, at its election, to contest the real estate taxes and special assessments on the Marina.

D. Delinquent Payment; Handling Charges. All past due payments required of Tenant under this Lease shall bear interest from the date due until paid at the lesser of 10% per annum or the maximum lawful rate of interest (such lesser amount is referred to as the "Interest Rate"). Additionally, Landlord may charge Tenant a one-time fee equal to 5% of the delinquent payment that is not paid within 4 days of the applicable due date to reimburse Landlord for its cost and inconvenience caused by such delinquent payment. In no event, however, shall the charges permitted under this Section or elsewhere in this Lease, to the extent they are considered to be interest under applicable Law, exceed the maximum lawful rate of interest. The term "Laws" means collectively all federal, state, and local laws, ordinances, rules and regulations, all court orders or rulings, governmental directives, and governmental orders and all interpretations of the foregoing, and all restrictions, restrictive covenants and/or ground leases affecting the Premises. If Tenant fails in 2 consecutive months to timely make rental payments, Landlord may require (and in addition to any late charge or interest accruing pursuant to this Section, as well as any other rights and remedies accruing pursuant to Section 12 below, or any other provision of this lease or at law or equity), that Base Rent be paid quarterly in advance and that all future rental payments are to be made on or before the due date by cashier's check or money order.

E. Early Occupancy. If Tenant occupies the Premises prior to the Commencement Date, Tenant's Occupancy of the Premises shall be subject to all of the provisions of this Lease. Early occupancy of the Premises shall not advance the Expiration Date. Unless otherwise provided herein, Tenant shall pay Base Rent and all other charges specified in this Lease for the period of Occupancy.

**3. Security Deposit.** Contemporaneously with the execution of this Lease, Tenant shall deposit the Security Deposit specified in Section 1 (if applicable) with Landlord as security for the full and faithful performance by Tenant of all of Tenant's

obligations under this Lease. No interest shall be paid upon the Security Deposit nor shall Landlord be required to maintain the deposit in a segregated account, unless required by Law. The Security Deposit is not an advance payment of Rent or a measure or limit of Landlord's damages if Tenant defaults under this Lease. If Tenant defaults in its obligations under this Lease, then Landlord may, without notice, either retain the Security Deposit as liquidated damages or apply it toward any damages sustained by Landlord. Following any such application of the Security Deposit, Tenant shall pay to Landlord on demand the amount so applied in order to restore the Security Deposit to its original amount. To the fullest extent permitted by Law, Tenant agrees that the provisions of this Section supersede and replace all statutory rights of Tenant under applicable Law regarding the retention, application or return of security deposits. If Landlord transfers its interest in the Building, Landlord shall have the right to transfer the Security Deposit to the transferee, and Landlord shall thereupon be relieved of all obligations to return the Security Deposit to Tenant, and Tenant agrees to look solely to the transferee for the return of the Security Deposit. Landlord shall, within the time required by Law, return to Tenant the portion of the Security Deposit (if any) remaining after deducting all damages, charges and other amounts permitted by Law and this Lease.

**4. Use of the Premises.**

A. Permitted Use. The Premises shall, at all times during the Term, be used and occupied by Tenant only for the use specified in Section 1 and any uses incidental to such use AND NO OTHER USE. Tenant shall not permit any objectionable or unpleasant odors, smoke, dust, gas, noise or vibrations to emanate from the Premises, nor take any other action (or permit its employees, guests or invitees to take any action) which would constitute a nuisance, disturb or endanger any other tenants of the Marina, unreasonably interfere with such other tenants' use of their respective space, or tend to injure the reputation of the Marina. Tenant's business in the Premises shall be conducted only under the Trade Name, and Tenant will not use or permit the Premises to be used under any other name or trade name without Landlord's prior written consent. Unless otherwise expressly granted by another provision of this Lease, Tenant understands that Tenant shall have no right to access or make use of any space beyond the interior of the Premises, including the exterior walls or roof of any structure in the Marina.

B. Operating Covenant. Tenant covenants to promptly open a business in the Premises for the Permitted Use and to continuously and uninterruptedly occupy and use the entire Premises for such use throughout the Term. Tenant agrees that it shall keep the business located in the Premises open during the Operating Hours. Tenant acknowledges that the identity of Tenant, the specific character of Tenant's business, the anticipated use of the Premises, and the relationship between such use and other uses within the Building have been material considerations to Landlord's entry into this Lease. Any material change in the character of Tenant's business or use will constitute a default under this Lease. In addition to and not in lieu of the remedies provided for in Section 12, if Tenant deserts or vacates the Premises, then Landlord may terminate this Lease by notice to Tenant (the "Recapture Notice"). If Landlord gives the Recapture Notice, then this Lease shall terminate upon the 60th day (the "Recapture Date") after the date on which Tenant receives Landlord's Recapture Notice. Until the Recapture Date, the Lease shall remain in full force and effect and Tenant shall continue to be bound thereby including the obligations to pay Rent hereunder until the Recapture Date. If Landlord expressly exercises its rights under this Section (as distinguished from Landlord's exercise of its rights and remedies under Section 7 below), then on and after the Recapture Date, there shall be no further liability on the part of Landlord or Tenant except for obligations that expressly survive the expiration or sooner termination of this Lease.

C. Compliance. If any governmental license or permit (other than a certificate of occupancy for the entire Building), shall be required for the proper and lawful conduct of Tenant's Permitted Use in the Premises, Tenant, at its expense, shall duly procure and thereafter maintain such license or permit and submit the same to Landlord for inspection. Tenant shall comply with (i) any Laws affecting the Marina, (ii) all Laws regarding the operation of Tenant's business and the use, condition, configuration and occupancy of the Premises and the use of the common areas, and (iii) the Certificate of Use or Occupancy issued for the Premises. Tenant agrees to provide Landlord with copies of any notices that Tenant receives regarding a violation or alleged or potential violation of any Law relating to its operations in the Premises. Landlord makes no representations or warranties, express or implied, that applicable Laws allow the Premises to be used for the Permitted Use.

D. Hazardous Waste. Tenant shall not use, generate, store, or dispose of, or permit the use, generation, storage or disposal of Hazardous Materials on or about the Premises or the Marina except in a manner and quantity necessary for the ordinary performance of Tenant's business for the Permitted Use, and then only in compliance with all Laws. If Tenant breaches its obligations under this Section, Landlord may immediately take any and all action reasonably appropriate to remedy the same, including taking all appropriate action to clean up or remediate any contamination resulting from Tenant's use, generation, storage or disposal of Hazardous Materials. The term "Hazardous Materials" means any substance,

material, or waste which is now or hereafter classified or considered to be hazardous, toxic, or dangerous under any Law relating to pollution or the protection or regulation of human health, natural resources or the environment, or poses or threatens to pose a hazard to the health or safety of persons on the Premises or Marina. **Tenant shall indemnify, defend and hold Landlord harmless for, from and against any and all claims, demands, liabilities, causes of action, suits, judgments, damages and expenses (including reasonable attorneys' fees and cost of cleanup and remediation) arising out of or connected with Tenant's failure to comply with the terms of this Section, which indemnity shall survive the expiration or earlier termination of this Lease.**

E. Signage/Advertising. Tenant may not place any signs, ornaments or other objects ("Signs") on the exterior of Premises or anywhere else in the Marina, or paint or otherwise decorate or deface the exterior of the Building without Landlord's prior consent. Tenant shall maintain any permitted Signs in good condition and shall remove all Signs at the end of the Term and repair any damage and close any holes caused by such removal. Tenant will not conduct or solicit business or distribute advertising or promotional material in the lobby or other common areas of the Marina, or play music that is audible outside the Premises. Tenant shall not store or display any merchandise or other personal property outside of the Premises.

F. Common Areas. Tenant acknowledges and agrees that admittance to the Marina is restricted to the licensees of the Marina, other Marina customers and their guests only. Tenant, its guests, visitors and business invitees shall have the non-exclusive, revocable license AT THEIR OWN RISK to use the shared access, parking areas, and driveways serving the Marina, subject to the Rules and Regulations (defined below). Landlord reserves the right to alter, enlarge, diminish and reconfigure the common areas and to construct new improvements on the Marina, and Tenant agrees that the same will not constitute a constructive eviction or entitle Tenant to any compensation. Landlord reserves the right to change the name of the Marina at any time. Landlord reserves the right to designate parking areas for use by Tenant, its contractors and employees. Tenant agrees, Landlord can require Tenant and its employees to park in designated areas.

G. Delivery and Acceptance. Tenant agrees that no representations, statements or warranties expressed or implied have been made by or on behalf of Landlord in respect to the Premises or the Marina except as contained in this Lease. Tenant agrees that Landlord shall not be obligated to make any improvements or alterations to the Premises or Marina prior to the Commencement Date. By taking possession of the Premises, Tenant shall be deemed to have accepted the Premises in its "AS-IS", "WHERE-IS" and "WITH ALL FAULTS" condition and acknowledged that the Premises are in satisfactory condition and repair. If Landlord is unable to deliver possession of the Premises to Tenant by the stated Commencement Date, Rent shall abate proportionally to the date on which Landlord notifies Tenant that the Premises are available for occupancy, and the Rent Commencement Date (if applicable) and the Expiration Date of this Lease shall be adjusted accordingly (plus the number of days necessary for the Term to expire on the last day of a month) so that the Initial Term contained the number of months stated in Section 1. If delivery of possession of the Premises to Tenant is delayed, Landlord and Tenant shall, upon request of either party, execute an amendment to this Lease setting forth the revised Commencement Date, Rent Commencement Date (if applicable) and Expiration Date of the Term, however, the failure of the parties to execute such document shall not defer the Commencement Date, the Rent Commencement Date or otherwise invalidate this Lease.

H. Quiet Enjoyment. Landlord shall warrant and defend Tenant in the quiet enjoyment and possession of the Premises throughout the Term, subject to the terms, conditions and limitations set forth in this Lease.

I. Rules and Regulations. Tenant shall comply with the reasonable rules and regulations that Landlord may promulgate with respect to the occupancy and use of the Marina, Building and/or Premises (the "Rules and Regulations"). Landlord reserves the right to revise the Rules and Regulations from time to time, provided such revisions do not materially and adversely affect any of Tenant's rights under this Lease. In the event of any conflict between the provisions of this Lease and any rules or regulations, the provisions of this Lease shall govern. Tenant understands that Landlord will not be responsible to Tenant for the non-performance of any of the Rules and Regulations by other parties.

J. Substitute Premises. Subject to the conditions specified in this Subsection, Landlord reserves the right without Tenant's consent, on reasonable notice to Tenant, to substitute other premises within the Marina for the Premises; provided, the substituted premises shall (a) contain substantially the same rentable area as the Premises, (b) contain comparable tenant improvements, and (c) be made available to Tenant at the then current rental rate for such space, which in no event shall exceed the per square foot rental rate in effect under this Lease at the time of such substitution. The parties agree, upon request, to execute an amendment to this Lease to reflect the factual changes to this Lease related to such relocation.

**5. Services and Maintenance.**

A. Landlord's Services. Landlord shall operate, maintain, manage, equip, light, insure, repair, replace and secure the Marina or cause the same to be done in accordance with Section 5C below.

B. Utilities. Landlord agrees to supply electric, water and sewer, and gas (but only to the extent there is an existing gas connection in the Premises) connections to the Premises. Subject to the provisions of this Lease, Landlord agrees to furnish the Landlord Utilities to Tenant at no additional charge other than any trash, electricity or similar reimbursement payment expressly provided for in this Lease. Tenant shall obtain and pay for all utilities other than the Landlord Utilities that Tenant uses in connection with the Permitted Use before they become delinquent, together with any taxes, penalties, surcharges or the like pertaining to such utilities. Landlord may cause at Tenant's expenses any utilities used by Tenant to be separately metered and may cause any utilities other than the Landlord Utilities to be charged directly to Tenant by the applicable service provider. Tenant shall not install any equipment or use the Premises in a manner that will exceed or overload the capacity of any utility services. If Landlord reasonably determines that Tenant utilizes more Landlord Utilities than is reasonable given the Permitted Use, Tenant shall pay the cost incurred as a result of such additional usage (as reasonably estimated by Landlord). In no event shall Landlord be liable for any interruption or failure of any utility servicing the Marina or the Premises. Tenant hereby waives the provisions of any existing or future law, ordinance or governmental regulation permitting the termination of this Lease due to an interruption, failure or inability to provide any services. Landlord may stop any or all utility services in case of accident or breakdown, or for the purpose of making alterations, repairs or improvements. Landlord shall use reasonable efforts to restore any service required of it that becomes unavailable; however, such unavailability shall not: render Landlord liable for any damages caused thereby; be a constructive eviction of Tenant; constitute a breach of any implied warranty; or entitle Tenant to any abatement of Tenant's obligations under this Lease.

C. Landlord's Repairs/Maintenance. Landlord shall maintain the common areas of the Marina, the structural portions of the Building, including the foundations, load bearing and exterior walls (excluding glass), subflooring and roof, and the unexposed electrical, plumbing and sewer systems, reasonable wear and tear excepted, provided, however, to the extent any such repair or replacement is necessitated by the acts or omissions of Tenant, its officers, directors, employees, agents, representatives, licensees, invitees, customers, assignees, subtenants, or contractors, Tenant shall be liable for the entire cost of such repair or replacement. The costs of maintenance and repairs performed by Landlord will be included in the calculation of Operating Expenses. Except as otherwise specifically provided in this Lease, Landlord shall have no duty to maintain, repair, clean or service the Premises. Tenant shall promptly report any accident, injury, water leakage, water damage or mold in or about the Premises or the Marina to Landlord, and Tenant's failure to do so shall result in Tenant being liable for any resulting damage or loss that Landlord suffered by Landlord. Tenant waives the right to make repairs at Landlord's expense under any Law.

D. Tenant's Repairs/Maintenance. Except to the extent Landlord is obligated to do so pursuant to Section 5C, Tenant shall maintain the Premises in good repair and condition and shall make all repairs and replacements and perform all maintenance necessary to keep the Premises in such condition, including all plumbing, electrical and lighting facilities from the point where they enter the Premises (but Tenant shall not be responsible for those utilities within or below the slab or foundation), fixtures, light bulbs, interior walls and interior surfaces of exterior walls, ceilings, , skylights, doors located within the Premises and any Tenant signs. Tenant shall perform all repairs and maintenance in a good and workmanlike manner, using materials and labor of the same character, kind and quality as originally employed within the Marina; and all such repairs and maintenance shall be in compliance with all Laws, as well as all requirements of Landlord's insurance carrier. If Tenant refuses or neglects to repair and maintain the Premises properly as required hereunder to the reasonable satisfaction of Landlord, Landlord, at any time following 10 days from the date on which Landlord makes a written demand on Tenant to effect such repair and maintenance, may enter upon the Premises and make such repairs and/or maintenance, and upon completion thereof, Tenant agrees to pay to Landlord as Additional Rent, Landlord's costs for making such repairs plus an amount not to exceed 10% of such costs for overhead.

E. Trash/Cleaning. Tenant agrees to keep all accumulated garbage and rubbish in covered containers and shall dispose of its trash and refuse only in dumpsters or other receptacles provided by Landlord. Landlord may, at its sole option, bill Tenant directly for its proportionate share of the costs attributable to the receptacle used by Tenant, such share to be computed by Landlord based upon Landlord's reasonable estimate of Tenant's usage of the dumpster taking into account the size of the dumpster and Tenant's use of the dumpster. In the event Landlord incurs costs related to extra dumps, pressure washing or debris pickup arising from or caused by Tenant's specific use of any trash receptacle, such costs shall be paid by Tenant. Tenant shall regularly clean the Premises and avoid conditions that would harbor pests. Tenant shall use at Tenant's cost such pest extermination contractor as Landlord may direct and at such intervals as Landlord may

reasonably require, provided the cost thereof is competitive with comparable vendors. Tenant shall regularly clean the windows and doors in the Premises.

F. ADA Compliance. Landlord represents and warrants that as of the Commencement Date, the Premises shall comply with Title III of the Americans With Disabilities Act of 1990, any Laws governing handicapped access or architectural barriers, and all rules, regulations, and guidelines promulgated under such Laws, as amended from time to time (the "Disabilities Acts"). At all times during the term of this Lease, Tenant, at Tenant's sole cost and expense, shall cause all alterations and improvements in the Premises, and Tenant's use and occupancy of the Premises, and Tenant's performance of its obligations under this Lease, to comply with the Disabilities Acts, and all amendments, revisions or modifications thereto now or hereafter adopted or in effect in connection therewith and to take such actions and make such alterations and improvements as are necessary for such compliance; provided, however, that Tenant shall not make any such alterations or improvements except upon Landlord's prior written consent pursuant to the terms and conditions of this Lease.

**6. Alterations/Trade Fixtures.**

A. Alterations. Except for *de minimis* cosmetic, non-structural improvements to the interior of the Premises, Tenant may not make any changes, additions, alterations, improvements or additions (collectively, "Alterations") or attach or install any fixtures to the Premises without Landlord's prior written consent. No Alterations may be removed by Tenant without Landlord's prior written consent and shall become and remain the property of Landlord unless otherwise agreed by Landlord in writing. Any Alterations shall be constructed and/or installed in a good and workmanlike manner in compliance with the Law.

B. Contractor Requirements. Any contractor or subcontractor performing Alterations or other services to Tenant at the Marina shall be performed only by licensed and insured contractors approved in advance by Landlord, which approval Landlord shall be entitled to condition on such contractor executing liability waivers in form and substance acceptable to Landlord, delivering proof of adequate insurance and necessary permits and/or licenses and paying reasonable facility fees to Landlord. Landlord shall have the right to post notices on the Premises that Landlord shall not be responsible for payment related to any Alterations by Tenant. Any mechanics or materialmen's lien for which Landlord has received a notice of intent to file or which has been filed against the Premises or the Marina arising out of work done for, or materials furnished to or on behalf of Tenant, its contractors or subcontractors shall be discharged, bonded over, or otherwise satisfied by Tenant within 10 days following the date Tenant receives notice of intent to file a lien or notice that the lien has been filed (whichever is earlier). If Tenant fails to discharge, bond over, or otherwise satisfy any such lien, Landlord may do so, and Tenant shall reimburse Landlord for all costs incurred, including reasonable attorneys' fees. Notwithstanding the foregoing, Tenant's furniture, machinery, equipment and any trade fixtures, other than fixtures that cannot be removed without damage to the Premises, shall remain the property of Tenant and may be removed by Tenant. Tenant, at its cost, shall promptly repair any damage to the Premises or Marina resulting from the installation or removal of any of Tenant's machinery, equipment and trade fixtures.

**7. Insurance/Indemnity.**

A. Insurance Policies. During the Term, Tenant shall maintain insurance in the following amounts with duly licensed insurance companies reasonably acceptable to Landlord: (a) Commercial General Liability (*NOTE: a Marine Liability Policy or a Marine endorsement to the Commercial General Liability policy is required if the Premises are located on a pier, dock, boat or otherwise "over the water"*) covering bodily injury and property damage and personal and advertising injury with minimum limits of $1,000,000 per occurrence, $2,000,000 in the aggregate, $50,000 Fire Legal Liability limit, any one fire, and $10,000 medical expenses, any one person or, following the expiration of the Initial Term, such other amounts as Landlord may from time to time reasonably require; (b) if applicable, Business Auto Liability covering bodily injury and property damage claims arising out of the ownership, maintenance or use of any vehicle owned, hired or used by Tenant in carrying on its business with a combined single limit or $1,000,000 per occurrence, insuring Tenant; (c) Contractual Liability coverage sufficient to cover Tenant's indemnity obligations hereunder; (d) Property coverage covering the full replacement cost of Tenant's alterations and improvements and betterments to the Premises and all furniture, trade fixtures and personal property (including property of Tenant or others) in the Premises or otherwise placed in the Marina by or on behalf of a Tenant; (e) if Tenant uses a vessel in the operation of its business at the Marina, Hull coverage of at least market value of the vessel, including Protection and Indemnity coverage with minimum limits of $1,000,000 per occurrence, $2,000,000 in the aggregate; (f) if applicable, Worker's Compensation coverage with statutory limits and Employer's Liability coverage with a minimum of $500,000 in limits each accident and $500,000 each employee, and, if Tenant's employees operate vessels on the navigable waters of the United States, Maritime Employer's Liability coverage with minimum limits of $500,000 each accident and $500,000 each employee; *and* (g) Site Specific Pollution Legal Liability coverage covering the

Premises, with limits of not less than $1,000,000, on a Claims Made form with a retroactive date that is no later than the Commencement Date, covering Bodily Injury, Property Damage (including resultant loss of use), Natural Resource Damage, and Clean-Up Costs as a result of any pollutant release on the Premises and which migrates off the Premises, with an extended reporting period of at least three years after the expiration of this Lease.

B. Other Insurance Requirements. The insurance policies to be maintained by Tenant shall include the following endorsements: (i) a Waiver of Subrogation endorsement in favor of "Safe Harbor Marinas, LLC, Sun Communities, Inc., and their respective affiliates and subsidiaries" on all policies; (ii) Additional Insured and Primary and Non-contributory endorsements in favor of "Safe Harbor Marinas, LLC, Sun Communities, Inc., and their respective parents, affiliates and subsidiaries" on all liability policies (excluding Workers Compensation), and (iii) a Loss Payee endorsement in favor of "Safe Harbor Marinas, LLC, Sun Communities, Inc., and their respective affiliates and subsidiaries" on the Property policy (excluding Hull coverage). Upon Landlord's request, Tenant shall also name Landlord's mortgagee, mortgage servicer, and/or Landlord's managing agent, as loss payees or additional insured(s), as its/their interest(s) may appear, on the insurance policies described in this Section. All insurance policies to be maintained by Tenant shall be issued by companies with an A.M. Best's rating of A-:VIII or better and may have a deductible of no more than $25,000 per occurrence, for which Tenant shall be solely responsible. Tenant shall obtain a written obligation on the part of each insurer to notify Landlord at least 30 days before cancellation or a material change to any such insurance policies. Tenant shall provide evidence satisfactory to Landlord of the maintenance of all insurance coverages and endorsements required under this Lease prior to the Commencement Date (or any earlier date that Tenant occupies the Premises) and at least 15 days prior to each renewal of said policies. **If Tenant fails to maintain the insurance required by this Section, Tenant agrees that Landlord may, but shall not be obligated to, obtain such insurance at Tenant's expense**. Tenant understands that the insurance amounts required are minimum requirements and are not intended in any way to limit Tenant's liability under this Lease.

C. Assumption of Risk. Tenant agrees that Landlord, and its designated property management company, Safe Harbor Marinas, LLC, SHM TRS, LLC, and their respective parents, partners, members, affiliates and subsidiaries, and all of their respective officers, trustees, directors, shareholders, employees, servants, partners, representatives, insurers and agents (collectively, "Landlord Indemnitees") shall not be liable to Tenant or to any party claiming by, through or under Tenant for (and Tenant hereby releases Landlord Indemnitees from any claim or responsibility for) any injury to persons or damage to or destruction, loss, or loss of use, or theft of any property of Tenant or of Tenant's officers, directors, employees, agents, representatives, licensees, invitees, customers, assignees, subtenants, or contractors (collectively, "Tenant Parties") located in or about the Premises or the Marina or of any injury (including death) of any Tenant Parties, caused by casualty, theft, fire, third parties or any other matter or cause (including any named storm or act of God), **even if such liabilities are caused solely or in part by the negligence of any Landlord Indemnitee, but not to the extent such liabilities are caused by the gross negligence or willful misconduct of any such Landlord Indemnitee.** Tenant acknowledges that Landlord shall not carry insurance on, and shall not be responsible for damage to, any property of a Tenant Party located in or about the Marina. Tenant hereby acknowledges that Landlord shall not be liable for any interruption to Tenant's business for any cause whatsoever and that Tenant will obtain business interruption insurance coverage should Tenant desire to provide coverage for such risk.

D. Tenant's Indemnity. **Subject to the waiver of subrogation in Section 7E, Tenant hereby agrees to indemnify, protect, defend and hold harmless the Landlord Indemnitees for, from and against all liabilities, claims, fines, penalties, costs, damages or injuries to persons, damages to property, losses, liens, causes of action, suits, judgments and expenses (including court costs, attorneys' fees, expert witness fees and costs of investigation), of any nature, kind or description of any person or entity, directly or indirectly arising out of, caused by, or resulting from (in whole or part) (i) Tenant's construction of or use, occupancy or enjoyment of the Premises and Marina, (ii) any activity, work or other things done, permitted or suffered by a Tenant Party in or about the Premises and Marina, (iii) any breach or default in the performance of any of Tenant's obligations under this Lease, (iv) any act, omission, negligence or willful misconduct of a Tenant Party, or (v) any damage to a Tenant Party's property; EVEN IF SUCH LIABILITIES ARE CAUSED SOLELY OR IN PART BY THE NEGLIGENCE OF ANY LANDLORD INDEMNITEE, BUT NOT TO THE EXTENT SUCH LIABILITIES ARE CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY SUCH LANDLORD INDEMNITEE. The foregoing indemnities shall survive termination or expiration of this Lease.**

E. Waiver of Subrogation. Landlord and Tenant hereby mutually waive any and all rights of recovery against one another based upon the negligence of either party or their agents or employees for real or personal property loss or damage occurring to the Premises or to the Marina or any personal property located on the Marina or in the Premises from perils

which are paid or reimbursed by an insurer of Landlord or Tenant under any fire, extended coverage or other property insurance policy maintained by Tenant with respect to its Premises or by Landlord with respect to the Building or the Marina (or which would have been paid had the insurance required to be maintained under this Lease been in full force and effect). Each party shall cause its insurance carrier to endorse all applicable policies waiving the carrier's rights of recovery under subrogation or otherwise against the other party.

8. **Casualty.** If the Premises are damaged by fire or other casualty (collectively "Casualty"), Landlord shall repair the damage if such repairs can, in Landlord's opinion, be made within 60 days after the occurrence of such Casualty without the payment of overtime or other premiums. If such repairs cannot, in Landlord's opinion, be made within 60 days, Landlord may either (i) terminate this Lease or (ii) make such repairs within a reasonable time, and this Lease shall continue in effect. Landlord shall notify Tenant within 30 days after the Casualty of its decision to either terminate or make such repairs. If Landlord elects to restore the Marina following a casualty, Landlord shall not be required to expend any amounts in excess of the insurance proceeds actually received by Landlord as a result of said casualty. The substantial destruction of the Marina shall automatically terminate this Lease. In the event Landlord makes such repairs, then until such repairs are completed, the Rent shall be abated in proportion to the part of the Premises which is unusable by Tenant in the conduct of Tenant's business. Unless this Lease is cancelled by Landlord pursuant to this Section, Tenant at Tenant's expense shall repair and refixture the interior of the Premises in a manner and to at least a condition equal to that existing prior to its destruction or casualty and the proceeds of all insurance carried by Tenant on its property and improvements shall be held in trust by Tenant for the purpose of said repair and replacement.

9. **Condemnation.** If the whole or any part of the Marina shall be taken in condemnation, or transferred by agreement in lieu of condemnation, either Tenant or Landlord may terminate this Lease effective as of the taking date by notice to the other party; provided that Tenant shall only have the right to terminate this Lease pursuant to this Section to the extent that the condemnation materially and adversely impacts Tenant's ability to operate its business in the Premises. If neither Tenant nor Landlord elect to terminate this Lease as aforesaid, then this Lease shall terminate on the taking date only as to that portion of any part of the Premises (if any) so taken, and the Rent and other charges payable by Tenant shall be reduced proportionally. If any such taking occurs, then Landlord shall receive the entire award or other compensation for the Marina and other improvements taken; however, Tenant may separately pursue a claim (to the extent it will not reduce Landlord's award) against the condemnor for the value of Tenant's personal property which Tenant is entitled to remove under this Lease, moving costs, loss of business, and other claims it may have.

10. **Assignment and Subletting.** Tenant shall not, either voluntarily or by operation of law, directly or indirectly, sell, mortgage, pledge, assign or transfer this Lease, in whole or in part, or sublet any part of the Premises, or permit any part of the Premises to be occupied by any person, or entity except Tenant, without the prior written consent of Landlord in each instance in Landlord's sole discretion, which shall include the review of any prospective assignee's or sublessee's financial statements. The direct or indirect transfer of a controlling interest or 50% or more of the beneficial ownership interest in Tenant, if Tenant is an entity, shall constitute an assignment under this Section requiring Landlord's prior written consent. Landlord shall have the unrestricted right to sell or otherwise transfer all or any portion of Landlord's interest in the Marina or the Premises, or mortgage, pledge, assign or transfer its rights under this Lease, in whole or in part, and Tenant agrees to attorn to and recognize any such assignee as Landlord under this Lease. The foregoing attornment shall be effective and self-operative without the execution of any further instruments upon the transferee succeeding to Landlord's interest under this Lease, however, Tenant agrees to execute any further instrument(s) which a transferee succeeding to Landlord's interest or a prospective mortgagee of the Landlord's interest may deem desirable to evidence such attornment and irrevocably constitutes and appoints Landlord as Tenant's attorney-in-fact to execute any such instrument for and on behalf of Tenant.

11. **Defaults.** The occurrence of any of the following shall constitute a material default and breach of the Lease by Tenant (a "Default"): (i) Tenant's vacating, failing to continually operate (subject to any temporary closures expressly permitted by this Lease) or abandoning the Premises; (ii) a failure to pay Rent or to make any other payment required to be made by Tenant under this Lease within 5 days after same is due and payable; (iii) a failure to maintain the insurance required pursuant to Section 7A-B of this Lease; (iv) any representation or warranty made by Tenant or Guarantor in this Lease or any other document delivered in connection with the execution and delivery of this Lease or pursuant to this Lease proves to be incorrect in any material respect; (v) the making by Tenant or any Guarantor of this Lease of any general assignment for the benefit of creditors; (vi) the filing by or against Tenant or Guarantor of a petition to have Tenant or Guarantor adjudged bankrupt or requiring reorganization (unless, in the case of a petition filed against Tenant or Guarantor, the same is dismissed within 60 days); (vii) the appointment of a trustee or receiver to take possession of substantially all of Tenant's assets or any judicial seizure of Tenant's assets, where possession is not restored to Tenant within 30 days; and (viii) a

failure by Tenant to observe and perform any other covenant or obligation under this Lease (other than as set forth in clauses (i)-(vii) above) to be observed or performed by Tenant, within 10 days after written notice to Tenant specifying that Tenant has failed to perform such obligation; provided, however, that if the nature of Tenant's obligation is such that more than 10 days are required for its performance, then Tenant shall not be deemed to be in default if it shall commence such performance within such 10-day period and thereafter diligently prosecutes the same to completion by not later than 45 days after Tenant receives written notice.

**12. Remedies.** In the event of a Default as set forth in Section 11, Landlord may exercise one or more of the following described remedies, in addition to all other rights and remedies available at law or in equity:

A. Landlord may continue this Lease in full force and effect and shall have the right to collect Rent when due, and Landlord may re-enter the Premises with or without legal process and relet it, or any part of it, to third parties for Tenant's account, and Tenant hereby expressly waives any and all claims for damages by reason of such re-entry, as well as any and all claims for damages by reason of any distress warrants or proceedings by way of sequestration which Landlord may employ to recover said rents. Tenant shall be liable immediately to Landlord for all costs Landlord incurs in reletting the Premises, including brokers' commissions, expenses of remodeling the Premises required by the reletting and reasonable attorneys' fees. In no event shall Landlord be under any obligation to relet the Premises. On the dates that Rent is due, Tenant shall pay to Landlord a sum equal to the Rent due under this Lease, less the rent Landlord receives from any reletting. No act by Landlord allowed by this paragraph shall terminate this Lease unless Landlord notifies Tenant in writing that Landlord elects to terminate this Lease.

B. Landlord may terminate this Lease. Upon termination, Landlord shall have the right to collect an amount equal to: all expenses incurred by Landlord in recovering possession of the Premises (including reasonable attorneys' fees and costs) plus all costs and charges for the care of the Premises while vacant; plus all renovation costs incurred in connection with the preparation of the Premises for a new tenant; plus all past due Rent which is unpaid, together with interest thereon at the Interest Rate; plus an amount by which the entire Rent for the remainder of the Term exceeds the loss of Rent that Tenant proves could have been reasonably avoided. Should any of these remedies, or any portion of these remedies, not be permitted by the laws of the state in which the Marina is located, then such remedy or portion of such remedy shall be considered deleted and unenforceable, and the remaining remedies or portions of such remedies shall be and remain in full force and effect. Landlord may avail itself of these as well as any other remedies or damages allowed by law. All rights, options and remedies of Landlord provided for in this Lease or elsewhere by law or in equity shall be deemed cumulative and not exclusive of one another.

C. To the extent permitted by Law, Landlord may change the locks on the Premises in the event Tenant fails to pay Rent and that Landlord shall not be liable for any damages resulting to the Tenant from such lockout.

D. In the event that Tenant is in Default under any provision of this Lease beyond any applicable cure period, other than for the payment of the Base Rent, Landlord may cure such Default on behalf of Tenant at Tenant's expense (including reasonable attorney's fees). Any such amounts expended by Landlord in curing such Default shall bear interest at the Interest Rate, and Tenant shall reimburse Landlord for same as Additional Rent.

**13. Right of Access.** Upon reasonable oral or written notice to Tenant, Landlord and its employees, contractors and agents shall have access to the Premises, and such access by Landlord, its employees, contractors and agents shall not constitute an actual or constructive eviction of Tenant. During any such access, Landlord shall use reasonable efforts to minimize the disruption to Tenant's business. Landlord and its employees, contractors, and agents shall have access to the Premises at any time without prior notice in the event of an emergency.

**14. End of Term.**

A. Surrender of Premises. At the termination or expiration of the Term of this Lease, Tenant shall surrender the Premises to Landlord in as good condition and repair as at the Commencement Date, reasonable wear and tear excepted, and will leave the Premises broom-clean. Tenant shall (i) remove any equipment, furniture, trade fixtures or other personal property placed in the Premises by Tenant, (ii) if requested by Landlord, remove any Alterations made by Tenant to the Premises, and (iii) restore the Premises to a condition substantially similar to that condition that existed prior to Tenant's installation of such fixtures and/or Alterations. If the last day of the Term falls on a Saturday, Sunday, Memorial Day, Independence Day, Labor Day, Thanksgiving, the day immediately following Thanksgiving, Christmas, or New Year's Day, this Lease shall expire on the immediately preceding day that is not a Federal holiday.

B. Holdover. If Tenant retains possession of the Premises after the termination or expiration of the Term, then Tenant shall, at Landlord's election become a tenant at sufferance (and not a tenant at will), such possession shall be subject to immediate termination by Landlord at any time, and all of the other terms and provisions of this Lease (excluding any expansion or renewal option or other similar right or option) shall be applicable during such holdover period, except that Tenant shall pay Landlord from time to time, upon demand, as Base Rent for the holdover period, an amount equal to 150% of the Base Rent in effect on the termination date. All other payments (including payment of Additional Rent) shall continue under the terms of this Lease. In addition, Tenant shall be liable for all damages incurred by Landlord as a result of such holding over. No holding over by Tenant, whether with or without consent of Landlord, shall operate to extend this Lease except as otherwise expressly provided, and this Paragraph shall not be construed as consent for Tenant to retain possession of the Premises.

**15. Estoppel/Subordination.**

A. Estoppel Certificate. Within 15 days following receipt of Landlord's written request, Tenant shall deliver a signed declaration to any person designated by Landlord: (i) ratifying this Lease; (ii) stating the commencement and termination dates of this Lease; and (iii) certifying (a) that this Lease is in full force and effect and has not been assigned, supplemented or amended (except by such writings as shall be stated); (b) that all conditions under this Lease to be performed by Landlord have been satisfied (stating exceptions, if any); (c) that no defenses, credits or offsets against the enforcement of this Lease by Landlord exist (or stating those claimed); (d) the sum of advance Rent, if any, paid by Tenant; (e) the date to which Rent has been paid; (f) the amount of security deposit paid to Landlord; and (g) such other information as Landlord reasonably requires.

B. Subordination. This Lease shall be subject and subordinate to the lien of any mortgage, deed to secure debt, deed of trust or other method of financing or refinancing now or hereafter existing against all or a part of the land, and to any existing or future lease by which Landlord leases the Marina and/or the land, and to all renewals, modifications, replacements, consolidations and extensions of any of the foregoing. Tenant shall execute and deliver all documents requested by any mortgagee, security holder or lessor to effect such subordination within 15 days after the receipt by Tenant of a written request. If Tenant fails to execute and deliver any such document requested by a mortgagee, security holder or lessor to effect such subordination, Landlord is hereby authorized to execute such documents and take such other reasonable steps as are necessary to effect such subordination on behalf of Tenant as Tenant's duly authorized irrevocable agent and attorney-in-fact, it being agreed that such power is one coupled with an interest. Additionally, this Lease and all rights of Tenant hereunder are and shall be subject and subordinate to all matters of record, as well as any other instrument in the nature thereof which may now or hereafter affect Landlord's title to the Premises or Landlord's interest under this Lease, and to any modifications, renewals, consolidations, extensions, or replacements of any of the foregoing.

**16. Transfer of Landlord's Interest; Limitation of Liability.** "Landlord" means the owner or ground lessee of the Marina from time to time, and in the event of any sale, conveyance or lease of the Marina, Landlord shall be released from obligations and liabilities on the part of Landlord accruing from and after the date of such transfer, and without further agreement between the parties, the purchaser, lessee or other transferee of the Marina shall be deemed to have assumed all covenants and conditions of Landlord under this Lease. Landlord's liability under this Lease is limited to its equity interest in the Marina, including any rents and proceeds therefrom, and Landlord's members, directors and officers shall have no personal liability under this Lease. In the event of the sale, transfer, or assignment of Landlord's interest in the Marina, or in the event of any foreclosure of, or in the event of exercise of the power of sale under any mortgage or deed of trust made by Landlord covering the Premises, Tenant will attorn to the purchaser and recognize such purchaser as "Landlord" under this Lease.

**17. OFAC**. Tenant represents and warrants to Landlord that: (i) Tenant is not currently identified on the Specially Designated Nationals and Blocked Persons List maintained by the Office of Foreign Assets Control of the Department of the Treasury ("OFAC"); (ii) Tenant is currently in compliance with and shall at all times during the Term (including any extension of the Term) remain in compliance with the regulations of the OFAC; (iii) Tenant shall comply with all requirements of United States law relating to money laundering, anti-terrorism, trade embargos and economic sanctions, now or hereafter in effect; and (iv) Tenant shall not use funds which Tenant receives from any "Prohibited Person" (as such term is defined in the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism) to make any payment due to Landlord under this Lease.

**18. Miscellaneous Provisions.**

DocuSign Envelope ID: FB700AA3-E8A7-4525-A23B-A80CF68C4C99

A. Recording. Tenant will not record this Lease or any memorandum of this Lease, and any such recording shall constitute an immediate Default under this Lease.

B. Notice. Unless changed in accordance with this Section, all notices, demands, approvals, and other communications provided for in this Lease shall be in writing to the addresses in Section 1 and may be given by: (i) hand delivery and shall be deemed given on the date of delivery; (ii) registered or certified mail and shall be deemed given the 3rd day following the date of mailing; or (iii) overnight delivery and shall be deemed given the following business day. On or after the Commencement Date, notices shall be sent to Tenant at the Premises. Prior to the Commencement Date, notices shall be sent to Tenant at address specified in Section 1 of this Lease.

C. Brokers. Landlord and Tenant hereby warrant and represent that in connection with this Lease, neither have dealt with any broker or other person or entity entitled to any brokerage commission, fee, or other compensation other than the Broker specified in Section 1 (if any), whose fees shall be paid by Landlord pursuant to a separate agreement. Each party shall indemnify, defend, protect and hold harmless the other, their agents and legal representatives, for, from and against any fee, commission, or other compensation due to any person, firm, or corporation other than Broker (if applicable) claiming to have acted in its behalf, which indemnity shall survive the expiration or earlier termination of this Lease.

D. Army Corps of Engineers. If the Marina is adjacent to or connected with a body of water over which the Army Corps of Engineers (or similar federal, state or local governmental authority, the "Authority") has jurisdiction or control and with whom Landlord has entered into a lease, license, contract or any other agreement pertaining to the use of the water by the Marina (the "Master Lease"), all provisions, terms, conditions, rules and regulations of such Master Lease between the Authority and Landlord is incorporated by reference into this Lease and shall apply to Tenant with the same force and effect as Landlord. This Lease shall be subject to and subordinate to the Master Lease. If there are any inconsistencies between this Lease and the Master Lease, the Master Lease shall control and govern. Notwithstanding the foregoing, nothing in this Lease gives Tenant any direct or third-party interest in the Master Lease.

E. Authority. If Tenant is a legal entity, each individual executing this Lease on behalf of Tenant hereby represents and warrants that Tenant is a duly authorized and existing entity under Law, that Tenant has and is qualified to do business in the State where the Marina is located, that the entity has full right and authority to enter into this Lease, and that each person signing on behalf of the entity is authorized to do so. Tenant shall provide Landlord on demand with such evidence of such authority as Landlord shall reasonably request. This Lease shall not be construed to create a partnership, joint venture or similar relationship or arrangement between Landlord and Tenant.

F. No Waiver. No waiver by Landlord or Tenant of any breach or default of any term, agreement, covenant or condition of this Lease shall be deemed to be a waiver of any other term, agreement, covenant or condition hereof or of any subsequent breach by Landlord or Tenant of the same or any other term, agreement, covenant or condition. Landlord's consent to or approval of any act by Tenant requiring Landlord's consent or approval shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any subsequent act of Tenant.

G. Governing Law/Waiver. This Lease shall be governed by the laws of the State where the Marina is located. LANDLORD AND TENANT WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY OF ANY CONTRACT OR TORT CLAIM, COUNTERCLAIM, CROSS-COMPLAINT, OR CAUSE OF ACTION IN ANY ACTION, PROCEEDING, OR HEARING BROUGHT BY EITHER PARTY AGAINST THE OTHER ON ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS LEASE.

H. Attorneys' Fees. If a lawsuit is brought by either party against the other for a breach or default under the terms of this Lease, the prevailing party shall be entitled to reasonable attorneys' fees. If Landlord utilizes the services of an attorney in an effort to enforce any of its rights under this Lease (other than in connection with a good faith dispute between Landlord and Tenant over a party's rights or obligation under this Lease) but such enforcement effort does not result in the bringing of legal action, Tenant shall immediately pay to Landlord upon demand the amount of such attorneys' fees incurred in such enforcement effort. If Landlord, without fault on Landlord's part, is made a party to any action instituted by Tenant or a third party against Tenant or by or against any person holding under or using the Premises by sublease or license of Tenant (where permitted under this Lease), or for the foreclosure of any lien for labor or material furnished to or for Tenant or any such other person, or otherwise arising out of or resulting from any act or omission of Tenant or of any such other person, Tenant shall indemnify, defend and hold Landlord harmless from any judgment rendered in connection therewith and all costs and expenses (including attorneys' fees) incurred by Landlord in connection with such action.

I. Time Periods. Except as otherwise expressly provided in this Lease, if the last day of any time period falls on a day that is not a business day, such time period shall be extended until the next succeeding business day. For the purposes of this Lease, "business day" means any day that is not a Saturday, Sunday, a Federal holiday, or the day after Thanksgiving Day. Time is of the essence of each and every provision of this Lease.

J. Confidentiality. Tenant acknowledges that the terms and conditions of this Lease are to remain confidential for Landlord's benefit, and may not be disclosed by Tenant to anyone, by any manner or means, directly or indirectly, without Landlord's prior written consent; however, Tenant may disclose the terms and conditions of this Lease if required by Law or court order, to its attorneys, accountants, employees and existing or prospective financial partners provided same are advised by Tenant of the confidential nature of such terms and conditions and agree to maintain the confidentiality thereof (in each case, prior to disclosure). Tenant shall be liable for any disclosures made in violation of this Section by Tenant or by any entity or individual to whom the terms of and conditions of this Lease were disclosed or made available by Tenant. The consent by Landlord to any disclosures shall not be deemed to be a waiver on the part of Landlord of any prohibition against any future disclosure.

K. Final Agreement; Other. The Section and paragraph captions contained in this Lease are for convenience only and shall not be considered in the construction or interpretation of any provision hereof. In this Lease, (i) the singular includes the plural and the plural includes the singular and the masculine gender includes the feminine and neuter and vice versa (ii) "or" means "and/or", (iii) "including" or "include" means "including without limitation", and (iv) unless otherwise specified, when exercising its right to approve or consent to an action, a party is entitled to withhold or condition such consent or approval in its sole and absolute discretion. This Lease may be executed in one or more counterparts, including facsimile signatures (e.g., pdf. files transmitted by email) or digital signatures affixed to electronic counterpart signature pages using digital signature software that electronically captures, or allows a signatory to adopt, an identifying mark as such person's signature to this Lease (e.g., Docusign®). This Lease shall be binding upon, and inure to the benefit of the parties hereto, their heirs, executors and administrators and permitted successors, assigns, heirs and devisees. If any part of this Lease shall be held unenforceable for any reason, the remainder of this Lease shall continue in full force and effect. If any provision of this Lease is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited. This Lease and the Exhibits attached to this Lease, which are hereby incorporated by reference, contain all of the agreements of the parties hereto with respect to any matter covered or mentioned in this Lease, and no prior agreement or understanding pertaining to any such matter shall be effective for any purpose. No provision of this Lease may be amended or added to except by an agreement in writing signed by the parties hereto or their respective successors in interest.

**19. Uniforms**. All Tenant's employees shall be dressed in uniforms appropriate for families when on the Property.

**20. Landlord's Right to Cancel**. Notwithstanding anything herein to the contrary, Landlord may, at Landlord's option, cancel and terminate this Lease at any time, for any reason or no reason at all and without penalty or fee, upon 30 days' written notice to Tenant.

**21. Golf Carts**. When on the Premises: (i) all operators of the Golf Cart shall have a valid driver's license; (ii) Tenant shall exercise reasonable care and not engage in any driving activities which could harm the Marina, Tenant, or others; (iii) neither Tenant nor any other operator of the Golf Cart shall use or consume drugs or alcohol while operating the Golf Cart; (iv) Tenant shall not use a cell phone or other handheld electronic device while operating the Golf Cart; (v) the number of passengers in the Golf Cart (including the Tenant) at any time shall not exceed the number of seats/seatbelts in the Golf Cart; (vi) all operators of the Golf Cart must follow both the Golf Cart Rules & Regulations and the Harbor Rules & Regulations (collectively, the "Golf Cart Rules"); and (vii) any additional Golf Cart(s) beyond those assigned to the Tenant in the Basic Lease Provisions are at Landlord's sole discretion to permit for Tenant use.

**22. Joint and Several Obligation**. If Tenant is comprised of more than one party or entity, the obligations imposed upon Tenant shall be joint and several obligations of all the parties and entities, and notices, payments and agreements given or made by, with or to any one person or entity shall be deemed to have been given or made by, with and to all of them.

**23. Affiliate Transfer.** Notwithstanding anything in this Lease to the contrary, Landlord hereby reserves the right to transfer and/or assign (in whole or in part) the rights, duties and obligations of Landlord under this Lease to any affiliate of Landlord without the consent or approval of Tenant. In the event of any such transfer and/or assignment (in whole or in part) to any such affiliate of Landlord, Landlord may continue to collect and receive all or any portion of the amounts payable hereunder by Tenant as agent for and on behalf of such affiliate-transferee/assignee and notify Tenant thereof in writing.

**24. State Specific Provisions**. Notwithstanding anything in this Lease to the Contrary, the following provisions shall control:

A. Radon Disclosure and Disclaimer. The following notification is required by Florida law and is provided for your information:

"Radon is a naturally occurring radioactive gas that, when it is accumulated in buildings in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida Additional information regarding radon and radon testing may be obtained from your country public health unit."

Landlord has not tested for Radon gas at the Marina and therefore, makes no representation regarding the presence or absence of such gas. Tenant hereby waives any and all actions against Landlord related to the presence of such gas.

[*Signature Page Follows*]

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

DocuSign Envelope ID: FB700AA3-E8A7-4525-A23B-A80CF68C4C99

IN WITNESS WHEREOF, the parties have duly executed this Lease as of the last date set forth below following the parties' signatures.

**LANDLORD**:

**SHM LMC, LLC,**
a Delaware limited liability company

By: DocuSigned by: Carolina Corral
17373BE8E9A34D1...
(Signature)

Name: Carolina Corral

Title: RVP

**TENANT**:

**STARBOARD YACHT GROUP, LLC,**
a Florida limited liability company

By: DocuSigned by: Jake Stratmann
97D4E0C2DE1E466...
(Signature)

Name: Jake Stratmann

Title: Mgr member

NOT AN OFFICIAL COPY - PUBLIC ACCESS NOT AN OFFICIAL COPY

DocuSign Envelope ID: FB700AA3-E8A7-4525-A23B-A80CF68C4C99

**EXHIBIT A**

**FLOOR PLAN OF THE PREMISES**

(see attached)

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

DocuSign Envelope ID: FB700AA3-E8A7-4525-A23B-A80CF68C4C99

**EXHIBIT B**

**AUTHORIZATION AGREEMENT FOR PREAUTHORIZED PAYMENT**

**I (WE) HEREBY AUTHORIZE Landlord, its parent, affiliate or subsidiary, to initiate debit entries in the amount stated in the current lease agreement and in accordance with any and all lease renewals and/or account charges to my (our) checking account indicated below at the bank named below, hereinafter call BANK, to debit the same to such account. All withdrawals will be made on or after the 1st of each month.**

**BANK NAME:** ______________________________

**CITY:** ______________________ **STATE:** __________ **ZIP:** __________

**ROUTING:** ______________________ **ACCOUNT NO:** ______________________




**This authorization is to remain in full force and effect until LANDLORD has received written notification from me (or either of us) of its terminations in such time and in such manner as to afford LANDLORD and BANK a reasonable opportunity to act on it.**

**NAME(S)** ______________________________

______________________________

**(PLEASE PRINT)**

**SIGNED:** ______________________________ **DATE:** ______________

**SIGNED:** ______________________________ **DATE:** ______________

**NOTE: ALL WRITTEN DEBIT AUTHORIZATIONS MUST PROVIDE THAT THE RECEIVER MAY REVOKE THE AUTHORIZATION ONLY BY NOTIFYING THE ORIGINATOR IN THE MANNER SPECIFIED IN THE AUTHORIZATION.**

DocuSign Envelope ID: C5908772-EAD7-4932-8C68-C1310F1D2D4A

# FIRST AMENDMENT TO LEASE

This First Amendment to Lease (this "Amendment") is executed as of July 1, 2023, between SHM LMC, LLC, a Delaware limited liability company ("Landlord"), and Starboard Yacht Group, LLC, a Florida limited liability company ("Tenant"), for the purpose of amending the Lease Agreement between Landlord and Tenant dated July 1, 2023 (the "Lease"). Capitalized terms used herein but not defined shall be given the meanings assigned to them in the Lease.

Pursuant to the terms of the Lease, Tenant is currently leasing the Premises (as defined in the Lease) in the marina commonly known as Lauderdale Marine Center located in Fort Lauderdale, FL (the "Marina"). Tenant desires, among other things, to amend the terms of the Lease, and Landlord has agreed to such on the terms and conditions contained in this Amendment.

For valuable consideration, whose receipt and sufficiency are acknowledged, Landlord and Tenant agree as follows:

1. **Electricity Reimbursement.** Tenant's Electricity Reimbursement listed in the Basic Lease Provisions is hereby deleted in its entirety and replaced with the following:

2.71% of the monthly FPL (Florida Power & Light) Bill.

2. **Brokerage**. Landlord and Tenant each warrant to the other that it has not dealt with any broker or agent in connection with the negotiation or execution of this Amendment. Tenant and Landlord shall each indemnify the other against all costs, expenses, attorneys' fees, and other liability for commissions or other compensation claimed by any broker or agent claiming the same by, through, or under the indemnifying party.

3. **Binding Effect; Governing Law**. Except as modified by this Amendment, the Lease shall remain in full effect and this Amendment shall be binding upon Landlord and Tenant and their respective permitted successors and assigns. If any inconsistency exists or arises between the terms of the Lease and the terms of this Amendment, the terms of this Amendment shall prevail. This Amendment shall be governed by the laws of the State in which the Premises are located. This Amendment may be executed in multiple counterparts, each of which shall constitute an original, but all of which shall constitute one document. This Amendment may be executed in one or more counterparts, including facsimile signatures (e.g., pdf. files transmitted by email) or digital signatures affixed to electronic counterpart signature pages using digital signature software that electronically captures, or allows a signatory to adopt, an identifying mark as such person's signature to this Amendment (e.g., Docusign®).

[*Signature Page Follows*]

NOT AN OFFICIAL COPY

DocuSign Envelope ID: C5908772-EAD7-4932-8C68-C1310F1D2D4A

Executed as of the date first written above.

**LANDLORD**:

**SHM LMC, LLC,**
a Delaware limited liability company

By: DocuSigned by: [signature]
17373B...
Name: Carolina Corral
Title: RVP

**TENANT**:

**STARBOARD YACHT GROUP, LLC,**
a Florida limited liability company

By: DocuSigned by: Jake Stratmann
37D4E0C2...
Name: Jake Stratmann
Title: Mgr member

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

# COMMERCIAL LEASE AGREEMENT

This **Commercial Lease Agreement** (this "Lease") is entered by Landlord and Tenant effective as of July 1, 2023. In consideration of the rents to be paid and the covenants and agreements to be performed by Tenant, Landlord hereby leases to Tenant and Tenant hereby leases from Landlord, the Premises described below on the following terms and conditions:

**1. Basic Lease Terms.**

Landlord: SHM LMC, LLC, a Delaware limited liability company.

Tenant: Starboard Yacht Group, LLC, a Florida limited liability company.

Marina: The marina known as Safe Harbor Lauderdale Marine Center, located at 2029 SW 20th Street, Fort Lauderdale, FL 33315, upon which the Premises is located.

Premises: Suite 215, comprising of approximately 528 square feet, in the building located at 2019 SW 20th Street, Fort Lauderdale, FL 33315 (the "Building"). The floor plan of the Premises is shown on the attached Exhibit A.

Commencement Date: July 1, 2023.

Expiration Date: June 30, 2024.

Term: Approximately twelve (12) months, beginning on the Commencement Date and ending on the Expiration Date (the "Initial Term"), unless earlier terminated as provided in this Lease.

Base Rent:

| *Period* | *Monthly Installment* |
|---|---|
| 07/01/2023 – 12/31/2023 | $2,182.74 (comprising of $2,049.52 of base rent *plus* $133.22 of sales tax) |
| 01/01/2024 – 06/30/2024 | $2,259.13 (comprising of $2,121.25 of base rent *plus* $137.88 of sales tax) |

Landlord Utilities: (i) water; (ii) 120-volt electricity for office purposes; and (iii) trash dumpster.

Electricity Reimbursement.

| *Period* | *Monthly Installment* |
|---|---|
| 07/01/2023 – 12/31/2023 | $55.54 |
| 01/01/2024 – 06/30/2024 | $57.49 |

Security Deposit: N/A.

Trade Name (d/b/a): N/A.

Golf Cart(s): Tenant is allowed one (1) golf cart on the property. Any additional golf carts will incur a fee of $200.00 per golf cart, per month. Additional golf carts are subject to Landlord's sole discretion and approval.

Permitted Use: Office space.

Broker: N/A.

Landlord Address:

SHM Lauderdale Marine Center
Attn: Lazaro Roig, Marina Manager
2029 SW 20th Street
Fort Lauderdale, FL 33315
Email: lroig@shmarinas.com

with a copy to:
Safe Harbor Marinas
Attn: Lease Administrator
14785 Preston Rd, Suite 975
Dallas, TX 75254

Tenant Address:

850 NE 3rd Street, Suite 208
Dania Beach, FL 33004
Email: jake@starboardyacht.com

**2. Rent.**

A. Base Rent. During the Term, Tenant agrees to pay the Base Rent specified in Section 1 to Landlord in monthly installments in advance without notice, demand, setoff or deduction **by ACH bank draft** [*please complete ACH Authorization form attached as Exhibit B*] or as otherwise directed by Landlord. The first monthly installment of Base Rent shall be due upon Tenant's execution of this Lease and, thereafter, each monthly installment shall be due on the 1st day of each calendar month. The Base Rent for any partial calendar month at the start or end of the Term shall be prorated and such prorated installment shall be payable at the same time as the first or last (as applicable) full monthly installment of Base Rent. Notwithstanding anything herein to contrary, in the event that the applicable sales tax changes, the parties agree that the Base Rent shall be modified to reflect the correct sales tax.

B. Additional Rent. In addition to Base Rent, Tenant shall pay Landlord the following ("Additional Rent"):

i. monthly Electricity Reimbursement to reimburse Landlord for electricity costs paid by Landlord;

ii. any sum owed for separately metered utilities or sub-metered utilities which the applicable utility directly bills Landlord but the cost of which are Tenant's responsibility under this Lease;

iii. $25/key for any additional or lost keys; and

iv. any other sums owed by Tenant pursuant to the terms of this Lease or otherwise arising in connection with Tenant's occupancy of the Premises.

All sums (including Additional Rent) other than the Base Rent and Percentage Rent payable by Tenant to Landlord under this Lease shall be due and payable upon 20 days written demand by Landlord, and Tenant's obligation to pay such sums shall survive the expiration or earlier termination of this Lease. The obligations of Tenant to pay Base Rent, Additional Rent, and other sums to Landlord and the obligations of Landlord under this Lease are independent obligations. Tenant shall pay and be liable for all rental, sales and use taxes or other similar taxes, if any, levied or imposed on Rent payments by any city, county, parish, state or other governmental body. Such payments shall be in addition to all other payments required to be paid to Landlord by Tenant under the terms of this Lease. Any such payment shall be paid to Landlord concurrently with the payment of Base Rent or Additional Rent upon which such tax is based. Tenant shall not do any act which may make void or voidable any insurance on the Premises or Marina; and, in the event Tenant's use of the Premises shall result in an increase in Landlord's insurance premiums, Tenant shall pay to Landlord upon demand, as Additional Rent, an amount equal to such increase in insurance.

C. Property Taxes. Landlord shall pay, prior to delinquency, all general real estate taxes and installments of special assessments coming due on the Premises during the Term. Tenant shall be responsible for paying all personal property taxes with respect to Tenant's personal property at the Premises. Landlord shall have the sole right, at its election, to contest the real estate taxes and special assessments on the Marina.

D. Delinquent Payment; Handling Charges. All past due payments required of Tenant under this Lease shall bear interest from the date due until paid at the lesser of 10% per annum or the maximum lawful rate of interest (such lesser amount is referred to as the "Interest Rate"). Additionally, Landlord may charge Tenant a one-time fee equal to 5% of the delinquent payment that is not paid within 4 days of the applicable due date to reimburse Landlord for its cost and inconvenience caused by such delinquent payment. In no event, however, shall the charges permitted under this Section or elsewhere in this Lease, to the extent they are considered to be interest under applicable Law, exceed the maximum lawful rate of interest. The term "Laws" means collectively all federal, state, and local laws, ordinances, rules and regulations, all court orders or rulings, governmental directives, and governmental orders and all interpretations of the foregoing, and all restrictions, restrictive covenants and/or ground leases affecting the Premises. If Tenant fails in 2 consecutive months to timely make rental payments, Landlord may require (and in addition to any late charge or interest accruing pursuant to this Section, as well as any other rights and remedies accruing pursuant to Section 12 below, or any other provision of this lease or at law or equity), that Base Rent be paid quarterly in advance and that all future rental payments are to be made on or before the due date by cashier's check or money order.

E. Early Occupancy. If Tenant occupies the Premises prior to the Commencement Date, Tenant's Occupancy of the Premises shall be subject to all of the provisions of this Lease. Early occupancy of the Premises shall not advance the Expiration Date. Unless otherwise provided herein, Tenant shall pay Base Rent and all other charges specified in this Lease for the period of Occupancy.

**3. Security Deposit.** Contemporaneously with the execution of this Lease, Tenant shall deposit the Security Deposit specified in Section 1 (if applicable) with Landlord as security for the full and faithful performance by Tenant of all of Tenant's

obligations under this Lease. No interest shall be paid upon the Security Deposit nor shall Landlord be required to maintain the deposit in a segregated account, unless required by Law. The Security Deposit is not an advance payment of Rent or a measure or limit of Landlord's damages if Tenant defaults under this Lease. If Tenant defaults in its obligations under this Lease, then Landlord may, without notice, either retain the Security Deposit as liquidated damages or apply it toward any damages sustained by Landlord. Following any such application of the Security Deposit, Tenant shall pay to Landlord on demand the amount so applied in order to restore the Security Deposit to its original amount. To the fullest extent permitted by Law, Tenant agrees that the provisions of this Section supersede and replace all statutory rights of Tenant under applicable Law regarding the retention, application or return of security deposits. If Landlord transfers its interest in the Building, Landlord shall have the right to transfer the Security Deposit to the transferee, and Landlord shall thereupon be relieved of all obligations to return the Security Deposit to Tenant, and Tenant agrees to look solely to the transferee for the return of the Security Deposit. Landlord shall, within the time required by Law, return to Tenant the portion of the Security Deposit (if any) remaining after deducting all damages, charges and other amounts permitted by Law and this Lease.

**4. Use of the Premises.**

A. Permitted Use. The Premises shall, at all times during the Term, be used and occupied by Tenant only for the use specified in Section 1 and any uses incidental to such use AND NO OTHER USE. Tenant shall not permit any objectionable or unpleasant odors, smoke, dust, gas, noise or vibrations to emanate from the Premises, nor take any other action (or permit its employees, guests or invitees to take any action) which would constitute a nuisance, disturb or endanger any other tenants of the Marina, unreasonably interfere with such other tenants' use of their respective space, or tend to injure the reputation of the Marina. Tenant's business in the Premises shall be conducted only under the Trade Name, and Tenant will not use or permit the Premises to be used under any other name or trade name without Landlord's prior written consent. Unless otherwise expressly granted by another provision of this Lease, Tenant understands that Tenant shall have no right to access or make use of any space beyond the interior of the Premises, including the exterior walls or roof of any structure in the Marina.

B. Operating Covenant. Tenant covenants to promptly open a business in the Premises for the Permitted Use and to continuously and uninterruptedly occupy and use the entire Premises for such use throughout the Term. Tenant agrees that it shall keep the business located in the Premises open during the Operating Hours. Tenant acknowledges that the identity of Tenant, the specific character of Tenant's business, the anticipated use of the Premises, and the relationship between such use and other uses within the Building have been material considerations to Landlord's entry into this Lease. Any material change in the character of Tenant's business or use will constitute a default under this Lease. In addition to and not in lieu of the remedies provided for in Section 12, if Tenant deserts or vacates the Premises, then Landlord may terminate this Lease by notice to Tenant (the "Recapture Notice"). If Landlord gives the Recapture Notice, then this Lease shall terminate upon the 60th day (the "Recapture Date") after the date on which Tenant receives Landlord's Recapture Notice. Until the Recapture Date, the Lease shall remain in full force and effect and Tenant shall continue to be bound thereby including the obligations to pay Rent hereunder until the Recapture Date. If Landlord expressly exercises its rights under this Section (as distinguished from Landlord's exercise of its rights and remedies under Section 7 below), then on and after the Recapture Date, there shall be no further liability on the part of Landlord or Tenant except for obligations that expressly survive the expiration or sooner termination of this Lease.

C. Compliance. If any governmental license or permit (other than a certificate of occupancy for the entire Building), shall be required for the proper and lawful conduct of Tenant's Permitted Use in the Premises, Tenant, at its expense, shall duly procure and thereafter maintain such license or permit and submit the same to Landlord for inspection. Tenant shall comply with (i) any Laws affecting the Marina, (ii) all Laws regarding the operation of Tenant's business and the use, condition, configuration and occupancy of the Premises and the use of the common areas, and (iii) the Certificate of Use or Occupancy issued for the Premises. Tenant agrees to provide Landlord with copies of any notices that Tenant receives regarding a violation or alleged or potential violation of any Law relating to its operations in the Premises. Landlord makes no representations or warranties, express or implied, that applicable Laws allow the Premises to be used for the Permitted Use.

D. Hazardous Waste. Tenant shall not use, generate, store, or dispose of, or permit the use, generation, storage or disposal of Hazardous Materials on or about the Premises or the Marina except in a manner and quantity necessary for the ordinary performance of Tenant's business for the Permitted Use, and then only in compliance with all Laws. If Tenant breaches its obligations under this Section, Landlord may immediately take any and all action reasonably appropriate to remedy the same, including taking all appropriate action to clean up or remediate any contamination resulting from Tenant's use, generation, storage or disposal of Hazardous Materials. The term "Hazardous Materials" means any substance,

material, or waste which is now or hereafter classified or considered to be hazardous, toxic, or dangerous under any Law relating to pollution or the protection or regulation of human health, natural resources or the environment, or poses or threatens to pose a hazard to the health or safety of persons on the Premises or Marina. **Tenant shall indemnify, defend and hold Landlord harmless for, from and against any and all claims, demands, liabilities, causes of action, suits, judgments, damages and expenses (including reasonable attorneys' fees and cost of cleanup and remediation) arising out of or connected with Tenant's failure to comply with the terms of this Section, which indemnity shall survive the expiration or earlier termination of this Lease.**

E. Signage/Advertising. Tenant may not place any signs, ornaments or other objects ("Signs") on the exterior of Premises or anywhere else in the Marina, or paint or otherwise decorate or deface the exterior of the Building without Landlord's prior consent. Tenant shall maintain any permitted Signs in good condition and shall remove all Signs at the end of the Term and repair any damage and close any holes caused by such removal. Tenant will not conduct or solicit business or distribute advertising or promotional material in the lobby or other common areas of the Marina, or play music that is audible outside the Premises. Tenant shall not store or display any merchandise or other personal property outside of the Premises.

F. Common Areas. Tenant acknowledges and agrees that admittance to the Marina is restricted to the licensees of the Marina, other Marina customers and their guests only. Tenant, its guests, visitors and business invitees shall have the non-exclusive, revocable license AT THEIR OWN RISK to use the shared access, parking areas, and driveways serving the Marina, subject to the Rules and Regulations (defined below). Landlord reserves the right to alter, enlarge, diminish and reconfigure the common areas and to construct new improvements on the Marina, and Tenant agrees that the same will not constitute a constructive eviction or entitle Tenant to any compensation. Landlord reserves the right to change the name of the Marina at any time. Landlord reserves the right to designate parking areas for use by Tenant, its contractors and employees. Tenant agrees, Landlord can require Tenant and its employees to park in designated areas.

G. Delivery and Acceptance. Tenant agrees that no representations, statements or warranties expressed or implied have been made by or on behalf of Landlord in respect to the Premises or the Marina except as contained in this Lease. Tenant agrees that Landlord shall not be obligated to make any improvements or alterations to the Premises or Marina prior to the Commencement Date. By taking possession of the Premises, Tenant shall be deemed to have accepted the Premises in its "AS-IS", "WHERE-IS" and "WITH ALL FAULTS" condition and acknowledged that the Premises are in satisfactory condition and repair. If Landlord is unable to deliver possession of the Premises to Tenant by the stated Commencement Date, Rent shall abate proportionally to the date on which Landlord notifies Tenant that the Premises are available for occupancy, and the Rent Commencement Date (if applicable) and the Expiration Date of this Lease shall be adjusted accordingly (plus the number of days necessary for the Term to expire on the last day of a month) so that the Initial Term contained the number of months stated in Section 1. If delivery of possession of the Premises to Tenant is delayed, Landlord and Tenant shall, upon request of either party, execute an amendment to this Lease setting forth the revised Commencement Date, Rent Commencement Date (if applicable) and Expiration Date of the Term, however, the failure of the parties to execute such document shall not defer the Commencement Date, the Rent Commencement Date or otherwise invalidate this Lease.

H. Quiet Enjoyment. Landlord shall warrant and defend Tenant in the quiet enjoyment and possession of the Premises throughout the Term, subject to the terms, conditions and limitations set forth in this Lease.

I. Rules and Regulations. Tenant shall comply with the reasonable rules and regulations that Landlord may promulgate with respect to the occupancy and use of the Marina, Building and/or Premises (the "Rules and Regulations"). Landlord reserves the right to revise the Rules and Regulations from time to time, provided such revisions do not materially and adversely affect any of Tenant's rights under this Lease. In the event of any conflict between the provisions of this Lease and any rules or regulations, the provisions of this Lease shall govern. Tenant understands that Landlord will not be responsible to Tenant for the non-performance of any of the Rules and Regulations by other parties.

J. Substitute Premises. Subject to the conditions specified in this Subsection, Landlord reserves the right without Tenant's consent, on reasonable notice to Tenant, to substitute other premises within the Marina for the Premises; provided, the substituted premises shall (a) contain substantially the same rentable area as the Premises, (b) contain comparable tenant improvements, and (c) be made available to Tenant at the then current rental rate for such space, which in no event shall exceed the per square foot rental rate in effect under this Lease at the time of such substitution. The parties agree, upon request, to execute an amendment to this Lease to reflect the factual changes to this Lease related to such relocation.

**5. Services and Maintenance.**

A. Landlord's Services. Landlord shall operate, maintain, manage, equip, light, insure, repair, replace and secure the Marina or cause the same to be done in accordance with Section 5C below.

B. Utilities. Landlord agrees to supply electric, water and sewer, and gas (but only to the extent there is an existing gas connection in the Premises) connections to the Premises. Subject to the provisions of this Lease, Landlord agrees to furnish the Landlord Utilities to Tenant at no additional charge other than any trash, electricity or similar reimbursement payment expressly provided for in this Lease. Tenant shall obtain and pay for all utilities other than the Landlord Utilities that Tenant uses in connection with the Permitted Use before they become delinquent, together with any taxes, penalties, surcharges or the like pertaining to such utilities. Landlord may cause at Tenant's expenses any utilities used by Tenant to be separately metered and may cause any utilities other than the Landlord Utilities to be charged directly to Tenant by the applicable service provider. Tenant shall not install any equipment or use the Premises in a manner that will exceed or overload the capacity of any utility services. If Landlord reasonably determines that Tenant utilizes more Landlord Utilities than is reasonable given the Permitted Use, Tenant shall pay the cost incurred as a result of such additional usage (as reasonably estimated by Landlord). In no event shall Landlord be liable for any interruption or failure of any utility servicing the Marina or the Premises. Tenant hereby waives the provisions of any existing or future law, ordinance or governmental regulation permitting the termination of this Lease due to an interruption, failure or inability to provide any services. Landlord may stop any or all utility services in case of accident or breakdown, or for the purpose of making alterations, repairs or improvements. Landlord shall use reasonable efforts to restore any service required of it that becomes unavailable; however, such unavailability shall not: render Landlord liable for any damages caused thereby; be a constructive eviction of Tenant; constitute a breach of any implied warranty; or entitle Tenant to any abatement of Tenant's obligations under this Lease.

C. Landlord's Repairs/Maintenance. Landlord shall maintain the common areas of the Marina, the structural portions of the Building, including the foundations, load bearing and exterior walls (excluding glass), subflooring and roof, and the unexposed electrical, plumbing and sewer systems, reasonable wear and tear excepted, provided, however, to the extent any such repair or replacement is necessitated by the acts or omissions of Tenant, its officers, directors, employees, agents, representatives, licensees, invitees, customers, assignees, subtenants, or contractors, Tenant shall be liable for the entire cost of such repair or replacement. The costs of maintenance and repairs performed by Landlord will be included in the calculation of Operating Expenses. Except as otherwise specifically provided in this Lease, Landlord shall have no duty to maintain, repair, clean or service the Premises. Tenant shall promptly report any accident, injury, water leakage, water damage or mold in or about the Premises or the Marina to Landlord, and Tenant's failure to do so shall result in Tenant being liable for any resulting damage or loss that Landlord suffered by Landlord. Tenant waives the right to make repairs at Landlord's expense under any Law.

D. Tenant's Repairs/Maintenance. Except to the extent Landlord is obligated to do so pursuant to Section 5C, Tenant shall maintain the Premises in good repair and condition and shall make all repairs and replacements and perform all maintenance necessary to keep the Premises in such condition, including all plumbing, electrical and lighting facilities from the point where they enter the Premises (but Tenant shall not be responsible for those utilities within or below the slab or foundation), fixtures, light bulbs, interior walls and interior surfaces of exterior walls, ceilings, , skylights, doors located within the Premises and any Tenant signs. Tenant shall perform all repairs and maintenance in a good and workmanlike manner, using materials and labor of the same character, kind and quality as originally employed within the Marina; and all such repairs and maintenance shall be in compliance with all Laws, as well as all requirements of Landlord's insurance carrier. If Tenant refuses or neglects to repair and maintain the Premises properly as required hereunder to the reasonable satisfaction of Landlord, Landlord, at any time following 10 days from the date on which Landlord makes a written demand on Tenant to effect such repair and maintenance, may enter upon the Premises and make such repairs and/or maintenance, and upon completion thereof, Tenant agrees to pay to Landlord as Additional Rent, Landlord's costs for making such repairs plus an amount not to exceed 10% of such costs for overhead.

E. Trash/Cleaning. Tenant agrees to keep all accumulated garbage and rubbish in covered containers and shall dispose of its trash and refuse only in dumpsters or other receptacles provided by Landlord. Landlord may, at its sole option, bill Tenant directly for its proportionate share of the costs attributable to the receptacle used by Tenant, such share to be computed by Landlord based upon Landlord's reasonable estimate of Tenant's usage of the dumpster taking into account the size of the dumpster and Tenant's use of the dumpster. In the event Landlord incurs costs related to extra dumps, pressure washing or debris pickup arising from or caused by Tenant's specific use of any trash receptacle, such costs shall be paid by Tenant. Tenant shall regularly clean the Premises and avoid conditions that would harbor pests. Tenant shall use at Tenant's cost such pest extermination contractor as Landlord may direct and at such intervals as Landlord may

reasonably require, provided the cost thereof is competitive with comparable vendors. Tenant shall regularly clean the windows and doors in the Premises.

F. ADA Compliance. Landlord represents and warrants that as of the Commencement Date, the Premises shall comply with Title III of the Americans With Disabilities Act of 1990, any Laws governing handicapped access or architectural barriers, and all rules, regulations, and guidelines promulgated under such Laws, as amended from time to time (the "Disabilities Acts"). At all times during the term of this Lease, Tenant, at Tenant's sole cost and expense, shall cause all alterations and improvements in the Premises, and Tenant's use and occupancy of the Premises, and Tenant's performance of its obligations under this Lease, to comply with the Disabilities Acts, and all amendments, revisions or modifications thereto now or hereafter adopted or in effect in connection therewith and to take such actions and make such alterations and improvements as are necessary for such compliance; provided, however, that Tenant shall not make any such alterations or improvements except upon Landlord's prior written consent pursuant to the terms and conditions of this Lease.

**6. Alterations/Trade Fixtures.**

A. Alterations. Except for *de minimis* cosmetic, non-structural improvements to the interior of the Premises, Tenant may not make any changes, additions, alterations, improvements or additions (collectively, "Alterations") or attach or install any fixtures to the Premises without Landlord's prior written consent. No Alterations may be removed by Tenant without Landlord's prior written consent and shall become and remain the property of Landlord unless otherwise agreed by Landlord in writing. Any Alterations shall be constructed and/or installed in a good and workmanlike manner in compliance with the Law.

B. Contractor Requirements. Any contractor or subcontractor performing Alterations or other services to Tenant at the Marina shall be performed only by licensed and insured contractors approved in advance by Landlord, which approval Landlord shall be entitled to condition on such contractor executing liability waivers in form and substance acceptable to Landlord, delivering proof of adequate insurance and necessary permits and/or licenses and paying reasonable facility fees to Landlord. Landlord shall have the right to post notices on the Premises that Landlord shall not be responsible for payment related to any Alterations by Tenant. Any mechanics or materialmen's lien for which Landlord has received a notice of intent to file or which has been filed against the Premises or the Marina arising out of work done for, or materials furnished to or on behalf of Tenant, its contractors or subcontractors shall be discharged, bonded over, or otherwise satisfied by Tenant within 10 days following the date Tenant receives notice of intent to file a lien or notice that the lien has been filed (whichever is earlier). If Tenant fails to discharge, bond over, or otherwise satisfy any such lien, Landlord may do so, and Tenant shall reimburse Landlord for all costs incurred, including reasonable attorneys' fees. Notwithstanding the foregoing, Tenant's furniture, machinery, equipment and any trade fixtures, other than fixtures that cannot be removed without damage to the Premises, shall remain the property of Tenant and may be removed by Tenant. Tenant, at its cost, shall promptly repair any damage to the Premises or Marina resulting from the installation or removal of any of Tenant's machinery, equipment and trade fixtures.

**7. Insurance/Indemnity.**

A. Insurance Policies. During the Term, Tenant shall maintain insurance in the following amounts with duly licensed insurance companies reasonably acceptable to Landlord: (a) Commercial General Liability (*NOTE: a Marine Liability Policy or a Marine endorsement to the Commercial General Liability policy is required if the Premises are located on a pier, dock, boat or otherwise "over the water"*) covering bodily injury and property damage and personal and advertising injury with minimum limits of $1,000,000 per occurrence, $2,000,000 in the aggregate, $50,000 Fire Legal Liability limit, any one fire, and $10,000 medical expenses, any one person or, following the expiration of the Initial Term, such other amounts as Landlord may from time to time reasonably require; (b) if applicable, Business Auto Liability covering bodily injury and property damage claims arising out of the ownership, maintenance or use of any vehicle owned, hired or used by Tenant in carrying on its business with a combined single limit or $1,000,000 per occurrence, insuring Tenant; (c) Contractual Liability coverage sufficient to cover Tenant's indemnity obligations hereunder; (d) Property coverage covering the full replacement cost of Tenant's alterations and improvements and betterments to the Premises and all furniture, trade fixtures and personal property (including property of Tenant or others) in the Premises or otherwise placed in the Marina by or on behalf of a Tenant; (e) if Tenant uses a vessel in the operation of its business at the Marina, Hull coverage of at least market value of the vessel, including Protection and Indemnity coverage with minimum limits of $1,000,000 per occurrence, $2,000,000 in the aggregate; (f) if applicable, Worker's Compensation coverage with statutory limits and Employer's Liability coverage with a minimum of $500,000 in limits each accident and $500,000 each employee, and, if Tenant's employees operate vessels on the navigable waters of the United States, Maritime Employer's Liability coverage with minimum limits of $500,000 each accident and $500,000 each employee; *and* (g) Site Specific Pollution Legal Liability coverage covering the

DocuSign Envelope ID: C5908772-EAD7-4932-8C68-C1310F1D2D4A

Premises, with limits of not less than $1,000,000, on a Claims Made form with a retroactive date that is no later than the Commencement Date, covering Bodily Injury, Property Damage (including resultant loss of use), Natural Resource Damage, and Clean-Up Costs as a result of any pollutant release on the Premises and which migrates off the Premises, with an extended reporting period of at least three years after the expiration of this Lease.

B. Other Insurance Requirements. The insurance policies to be maintained by Tenant shall include the following endorsements: (i) a Waiver of Subrogation endorsement in favor of "Safe Harbor Marinas, LLC, Sun Communities, Inc., and their respective affiliates and subsidiaries" on all policies; (ii) Additional Insured and Primary and Non-contributory endorsements in favor of "Safe Harbor Marinas, LLC, Sun Communities, Inc., and their respective parents, affiliates and subsidiaries" on all liability policies (excluding Workers Compensation), and (iii) a Loss Payee endorsement in favor of "Safe Harbor Marinas, LLC, Sun Communities, Inc., and their respective affiliates and subsidiaries" on the Property policy (excluding Hull coverage). Upon Landlord's request, Tenant shall also name Landlord's mortgagee, mortgage servicer, and/or Landlord's managing agent, as loss payees or additional insured(s), as its/their interest(s) may appear, on the insurance policies described in this Section. All insurance policies to be maintained by Tenant shall be issued by companies with an A.M. Best's rating of A-:VIII or better and may have a deductible of no more than $25,000 per occurrence, for which Tenant shall be solely responsible. Tenant shall obtain a written obligation on the part of each insurer to notify Landlord at least 30 days before cancellation or a material change to any such insurance policies. Tenant shall provide evidence satisfactory to Landlord of the maintenance of all insurance coverages and endorsements required under this Lease prior to the Commencement Date (or any earlier date that Tenant occupies the Premises) and at least 15 days prior to each renewal of said policies. **If Tenant fails to maintain the insurance required by this Section, Tenant agrees that Landlord may, but shall not be obligated to, obtain such insurance at Tenant's expense**. Tenant understands that the insurance amounts required are minimum requirements and are not intended in any way to limit Tenant's liability under this Lease.

C. Assumption of Risk. Tenant agrees that Landlord, and its designated property management company, Safe Harbor Marinas, LLC, SHM TRS, LLC, and their respective parents, partners, members, affiliates and subsidiaries, and all of their respective officers, trustees, directors, shareholders, employees, servants, partners, representatives, insurers and agents (collectively, "Landlord Indemnitees") shall not be liable to Tenant or to any party claiming by, through or under Tenant for (and Tenant hereby releases Landlord Indemnitees from any claim or responsibility for) any injury to persons or damage to or destruction, loss, or loss of use, or theft of any property of Tenant or of Tenant's officers, directors, employees, agents, representatives, licensees, invitees, customers, assignees, subtenants, or contractors (collectively, "Tenant Parties") located in or about the Premises or the Marina or of any injury (including death) of any Tenant Parties, caused by casualty, theft, fire, third parties or any other matter or cause (including any named storm or act of God), **even if such liabilities are caused solely or in part by the negligence of any Landlord Indemnitee, but not to the extent such liabilities are caused by the gross negligence or willful misconduct of any such Landlord Indemnitee**. Tenant acknowledges that Landlord shall not carry insurance on, and shall not be responsible for damage to, any property of a Tenant Party located in or about the Marina. Tenant hereby acknowledges that Landlord shall not be liable for any interruption to Tenant's business for any cause whatsoever and that Tenant will obtain business interruption insurance coverage should Tenant desire to provide coverage for such risk.

D. Tenant's Indemnity. **Subject to the waiver of subrogation in Section 7E, Tenant hereby agrees to indemnify, protect, defend and hold harmless the Landlord Indemnitees for, from and against all liabilities, claims, fines, penalties, costs, damages or injuries to persons, damages to property, losses, liens, causes of action, suits, judgments and expenses (including court costs, attorneys' fees, expert witness fees and costs of investigation), of any nature, kind or description of any person or entity, directly or indirectly arising out of, caused by, or resulting from (in whole or part) (i) Tenant's construction of or use, occupancy or enjoyment of the Premises and Marina, (ii) any activity, work or other things done, permitted or suffered by a Tenant Party in or about the Premises and Marina, (iii) any breach or default in the performance of any of Tenant's obligations under this Lease, (iv) any act, omission, negligence or willful misconduct of a Tenant Party, or (v) any damage to a Tenant Party's property; EVEN IF SUCH LIABILITIES ARE CAUSED SOLELY OR IN PART BY THE NEGLIGENCE OF ANY LANDLORD INDEMNITEE, BUT NOT TO THE EXTENT SUCH LIABILITIES ARE CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY SUCH LANDLORD INDEMNITEE. The foregoing indemnities shall survive termination or expiration of this Lease.**

E. Waiver of Subrogation. Landlord and Tenant hereby mutually waive any and all rights of recovery against one another based upon the negligence of either party or their agents or employees for real or personal property loss or damage occurring to the Premises or to the Marina or any personal property located on the Marina or in the Premises from perils

which are paid or reimbursed by an insurer of Landlord or Tenant under any fire, extended coverage or other property insurance policy maintained by Tenant with respect to its Premises or by Landlord with respect to the Building or the Marina (or which would have been paid had the insurance required to be maintained under this Lease been in full force and effect). Each party shall cause its insurance carrier to endorse all applicable policies waiving the carrier's rights of recovery under subrogation or otherwise against the other party.

**8. Casualty.** If the Premises are damaged by fire or other casualty (collectively "Casualty"), Landlord shall repair the damage if such repairs can, in Landlord's opinion, be made within 60 days after the occurrence of such Casualty without the payment of overtime or other premiums. If such repairs cannot, in Landlord's opinion, be made within 60 days, Landlord may either (i) terminate this Lease or (ii) make such repairs within a reasonable time, and this Lease shall continue in effect. Landlord shall notify Tenant within 30 days after the Casualty of its decision to either terminate or make such repairs. If Landlord elects to restore the Marina following a casualty, Landlord shall not be required to expend any amounts in excess of the insurance proceeds actually received by Landlord as a result of said casualty. The substantial destruction of the Marina shall automatically terminate this Lease. In the event Landlord makes such repairs, then until such repairs are completed, the Rent shall be abated in proportion to the part of the Premises which is unusable by Tenant in the conduct of Tenant's business. Unless this Lease is cancelled by Landlord pursuant to this Section, Tenant at Tenant's expense shall repair and refixture the interior of the Premises in a manner and to at least a condition equal to that existing prior to its destruction or casualty and the proceeds of all insurance carried by Tenant on its property and improvements shall be held in trust by Tenant for the purpose of said repair and replacement.

**9. Condemnation.** If the whole or any part of the Marina shall be taken in condemnation, or transferred by agreement in lieu of condemnation, either Tenant or Landlord may terminate this Lease effective as of the taking date by notice to the other party; provided that Tenant shall only have the right to terminate this Lease pursuant to this Section to the extent that the condemnation materially and adversely impacts Tenant's ability to operate its business in the Premises. If neither Tenant nor Landlord elect to terminate this Lease as aforesaid, then this Lease shall terminate on the taking date only as to that portion of any part of the Premises (if any) so taken, and the Rent and other charges payable by Tenant shall be reduced proportionally. If any such taking occurs, then Landlord shall receive the entire award or other compensation for the Marina and other improvements taken; however, Tenant may separately pursue a claim (to the extent it will not reduce Landlord's award) against the condemnor for the value of Tenant's personal property which Tenant is entitled to remove under this Lease, moving costs, loss of business, and other claims it may have.

**10. Assignment and Subletting.** Tenant shall not, either voluntarily or by operation of law, directly or indirectly, sell, mortgage, pledge, assign or transfer this Lease, in whole or in part, or sublet any part of the Premises, or permit any part of the Premises to be occupied by any person, or entity except Tenant, without the prior written consent of Landlord in each instance in Landlord's sole discretion, which shall include the review of any prospective assignee's or sublessee's financial statements. The direct or indirect transfer of a controlling interest or 50% or more of the beneficial ownership interest in Tenant, if Tenant is an entity, shall constitute an assignment under this Section requiring Landlord's prior written consent. Landlord shall have the unrestricted right to sell or otherwise transfer all or any portion of Landlord's interest in the Marina or the Premises, or mortgage, pledge, assign or transfer its rights under this Lease, in whole or in part, and Tenant agrees to attorn to and recognize any such assignee as Landlord under this Lease. The foregoing attornment shall be effective and self-operative without the execution of any further instruments upon the transferee succeeding to Landlord's interest under this Lease, however, Tenant agrees to execute any further instrument(s) which a transferee succeeding to Landlord's interest or a prospective mortgagee of the Landlord's interest may deem desirable to evidence such attornment and irrevocably constitutes and appoints Landlord as Tenant's attorney-in-fact to execute any such instrument for and on behalf of Tenant.

**11. Defaults.** The occurrence of any of the following shall constitute a material default and breach of the Lease by Tenant (a "Default"): (i) Tenant's vacating, failing to continually operate (subject to any temporary closures expressly permitted by this Lease) or abandoning the Premises; (ii) a failure to pay Rent or to make any other payment required to be made by Tenant under this Lease within 5 days after same is due and payable; (iii) a failure to maintain the insurance required pursuant to Section 7A-B of this Lease; (iv) any representation or warranty made by Tenant or Guarantor in this Lease or any other document delivered in connection with the execution and delivery of this Lease or pursuant to this Lease proves to be incorrect in any material respect; (v) the making by Tenant or any Guarantor of this Lease of any general assignment for the benefit of creditors; (vi) the filing by or against Tenant or Guarantor of a petition to have Tenant or Guarantor adjudged bankrupt or requiring reorganization (unless, in the case of a petition filed against Tenant or Guarantor, the same is dismissed within 60 days); (vii) the appointment of a trustee or receiver to take possession of substantially all of Tenant's assets or any judicial seizure of Tenant's assets, where possession is not restored to Tenant within 30 days; and (viii) a

failure by Tenant to observe and perform any other covenant or obligation under this Lease (other than as set forth in clauses (i)-(vii) above) to be observed or performed by Tenant, within 10 days after written notice to Tenant specifying that Tenant has failed to perform such obligation; provided, however, that if the nature of Tenant's obligation is such that more than 10 days are required for its performance, then Tenant shall not be deemed to be in default if it shall commence such performance within such 10-day period and thereafter diligently prosecutes the same to completion by not later than 45 days after Tenant receives written notice.

**12. Remedies.** In the event of a Default as set forth in Section 11, Landlord may exercise one or more of the following described remedies, in addition to all other rights and remedies available at law or in equity:

A. Landlord may continue this Lease in full force and effect and shall have the right to collect Rent when due, and Landlord may re-enter the Premises with or without legal process and relet it, or any part of it, to third parties for Tenant's account, and Tenant hereby expressly waives any and all claims for damages by reason of such re-entry, as well as any and all claims for damages by reason of any distress warrants or proceedings by way of sequestration which Landlord may employ to recover said rents. Tenant shall be liable immediately to Landlord for all costs Landlord incurs in reletting the Premises, including brokers' commissions, expenses of remodeling the Premises required by the reletting and reasonable attorneys' fees. In no event shall Landlord be under any obligation to relet the Premises. On the dates that Rent is due, Tenant shall pay to Landlord a sum equal to the Rent due under this Lease, less the rent Landlord receives from any reletting. No act by Landlord allowed by this paragraph shall terminate this Lease unless Landlord notifies Tenant in writing that Landlord elects to terminate this Lease.

B. Landlord may terminate this Lease. Upon termination, Landlord shall have the right to collect an amount equal to: all expenses incurred by Landlord in recovering possession of the Premises (including reasonable attorneys' fees and costs) plus all costs and charges for the care of the Premises while vacant; plus all renovation costs incurred in connection with the preparation of the Premises for a new tenant; plus all past due Rent which is unpaid, together with interest thereon at the Interest Rate; plus an amount by which the entire Rent for the remainder of the Term exceeds the loss of Rent that Tenant proves could have been reasonably avoided. Should any of these remedies, or any portion of these remedies, not be permitted by the laws of the state in which the Marina is located, then such remedy or portion of such remedy shall be considered deleted and unenforceable, and the remaining remedies or portions of such remedies shall be and remain in full force and effect. Landlord may avail itself of these as well as any other remedies or damages allowed by law. All rights, options and remedies of Landlord provided for in this Lease or elsewhere by law or in equity shall be deemed cumulative and not exclusive of one another.

C. To the extent permitted by Law, Landlord may change the locks on the Premises in the event Tenant fails to pay Rent and that Landlord shall not be liable for any damages resulting to the Tenant from such lockout.

D. In the event that Tenant is in Default under any provision of this Lease beyond any applicable cure period, other than for the payment of the Base Rent, Landlord may cure such Default on behalf of Tenant at Tenant's expense (including reasonable attorney's fees). Any such amounts expended by Landlord in curing such Default shall bear interest at the Interest Rate, and Tenant shall reimburse Landlord for same as Additional Rent.

**13. Right of Access.** Upon reasonable oral or written notice to Tenant, Landlord and its employees, contractors and agents shall have access to the Premises, and such access by Landlord, its employees, contractors and agents shall not constitute an actual or constructive eviction of Tenant. During any such access, Landlord shall use reasonable efforts to minimize the disruption to Tenant's business. Landlord and its employees, contractors, and agents shall have access to the Premises at any time without prior notice in the event of an emergency.

**14. End of Term.**

A. Surrender of Premises. At the termination or expiration of the Term of this Lease, Tenant shall surrender the Premises to Landlord in as good condition and repair as at the Commencement Date, reasonable wear and tear excepted, and will leave the Premises broom-clean. Tenant shall (i) remove any equipment, furniture, trade fixtures or other personal property placed in the Premises by Tenant, (ii) if requested by Landlord, remove any Alterations made by Tenant to the Premises, and (iii) restore the Premises to a condition substantially similar to that condition that existed prior to Tenant's installation of such fixtures and/or Alterations. If the last day of the Term falls on a Saturday, Sunday, Memorial Day, Independence Day, Labor Day, Thanksgiving, the day immediately following Thanksgiving, Christmas, or New Year's Day, this Lease shall expire on the immediately preceding day that is not a Federal holiday.

B. Holdover. If Tenant retains possession of the Premises after the termination or expiration of the Term, then Tenant shall, at Landlord's election become a tenant at sufferance (and not a tenant at will), such possession shall be subject to immediate termination by Landlord at any time, and all of the other terms and provisions of this Lease (excluding any expansion or renewal option or other similar right or option) shall be applicable during such holdover period, except that Tenant shall pay Landlord from time to time, upon demand, as Base Rent for the holdover period, an amount equal to 150% of the Base Rent in effect on the termination date. All other payments (including payment of Additional Rent) shall continue under the terms of this Lease. In addition, Tenant shall be liable for all damages incurred by Landlord as a result of such holding over. No holding over by Tenant, whether with or without consent of Landlord, shall operate to extend this Lease except as otherwise expressly provided, and this Paragraph shall not be construed as consent for Tenant to retain possession of the Premises.

**15. Estoppel/Subordination.**

A. Estoppel Certificate. Within 15 days following receipt of Landlord's written request, Tenant shall deliver a signed declaration to any person designated by Landlord: (i) ratifying this Lease; (ii) stating the commencement and termination dates of this Lease; and (iii) certifying (a) that this Lease is in full force and effect and has not been assigned, supplemented or amended (except by such writings as shall be stated); (b) that all conditions under this Lease to be performed by Landlord have been satisfied (stating exceptions, if any); (c) that no defenses, credits or offsets against the enforcement of this Lease by Landlord exist (or stating those claimed); (d) the sum of advance Rent, if any, paid by Tenant; (e) the date to which Rent has been paid; (f) the amount of security deposit paid to Landlord; and (g) such other information as Landlord reasonably requires.

B. Subordination. This Lease shall be subject and subordinate to the lien of any mortgage, deed to secure debt, deed of trust or other method of financing or refinancing now or hereafter existing against all or a part of the land, and to any existing or future lease by which Landlord leases the Marina and/or the land, and to all renewals, modifications, replacements, consolidations and extensions of any of the foregoing. Tenant shall execute and deliver all documents requested by any mortgagee, security holder or lessor to effect such subordination within 15 days after the receipt by Tenant of a written request. If Tenant fails to execute and deliver any such document requested by a mortgagee, security holder or lessor to effect such subordination, Landlord is hereby authorized to execute such documents and take such other reasonable steps as are necessary to effect such subordination on behalf of Tenant as Tenant's duly authorized irrevocable agent and attorney-in-fact, it being agreed that such power is one coupled with an interest. Additionally, this Lease and all rights of Tenant hereunder are and shall be subject and subordinate to all matters of record, as well as any other instrument in the nature thereof which may now or hereafter affect Landlord's title to the Premises or Landlord's interest under this Lease, and to any modifications, renewals, consolidations, extensions, or replacements of any of the foregoing.

**16. Transfer of Landlord's Interest; Limitation of Liability.** "Landlord" means the owner or ground lessee of the Marina from time to time, and in the event of any sale, conveyance or lease of the Marina, Landlord shall be released from obligations and liabilities on the part of Landlord accruing from and after the date of such transfer, and without further agreement between the parties, the purchaser, lessee or other transferee of the Marina shall be deemed to have assumed all covenants and conditions of Landlord under this Lease. Landlord's liability under this Lease is limited to its equity interest in the Marina, including any rents and proceeds therefrom, and Landlord's members, directors and officers shall have no personal liability under this Lease. In the event of the sale, transfer, or assignment of Landlord's interest in the Marina, or in the event of any foreclosure of, or in the event of exercise of the power of sale under any mortgage or deed of trust made by Landlord covering the Premises, Tenant will attorn to the purchaser and recognize such purchaser as "Landlord" under this Lease.

**17. OFAC.** Tenant represents and warrants to Landlord that: (i) Tenant is not currently identified on the Specially Designated Nationals and Blocked Persons List maintained by the Office of Foreign Assets Control of the Department of the Treasury ("OFAC"); (ii) Tenant is currently in compliance with and shall at all times during the Term (including any extension of the Term) remain in compliance with the regulations of the OFAC; (iii) Tenant shall comply with all requirements of United States law relating to money laundering, anti-terrorism, trade embargos and economic sanctions, now or hereafter in effect; and (iv) Tenant shall not use funds which Tenant receives from any "Prohibited Person" (as such term is defined in the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism) to make any payment due to Landlord under this Lease.

**18. Miscellaneous Provisions.**

DocuSign Envelope ID: C5908772-EAD7-4932-8C68-C1310F1D2D4A

A. Recording. Tenant will not record this Lease or any memorandum of this Lease, and any such recording shall constitute an immediate Default under this Lease.

B. Notice. Unless changed in accordance with this Section, all notices, demands, approvals, and other communications provided for in this Lease shall be in writing to the addresses in Section 1 and may be given by: (i) hand delivery and shall be deemed given on the date of delivery; (ii) registered or certified mail and shall be deemed given the 3rd day following the date of mailing; or (iii) overnight delivery and shall be deemed given the following business day. On or after the Commencement Date, notices shall be sent to Tenant at the Premises. Prior to the Commencement Date, notices shall be sent to Tenant at address specified in Section 1 of this Lease.

C. Brokers. Landlord and Tenant hereby warrant and represent that in connection with this Lease, neither have dealt with any broker or other person or entity entitled to any brokerage commission, fee, or other compensation other than the Broker specified in Section 1 (if any), whose fees shall be paid by Landlord pursuant to a separate agreement. Each party shall indemnify, defend, protect and hold harmless the other, their agents and legal representatives, for, from and against any fee, commission, or other compensation due to any person, firm, or corporation other than Broker (if applicable) claiming to have acted in its behalf, which indemnity shall survive the expiration or earlier termination of this Lease.

D. Army Corps of Engineers. If the Marina is adjacent to or connected with a body of water over which the Army Corps of Engineers (or similar federal, state or local governmental authority, the "Authority") has jurisdiction or control and with whom Landlord has entered into a lease, license, contract or any other agreement pertaining to the use of the water by the Marina (the "Master Lease"), all provisions, terms, conditions, rules and regulations of such Master Lease between the Authority and Landlord is incorporated by reference into this Lease and shall apply to Tenant with the same force and effect as Landlord. This Lease shall be subject to and subordinate to the Master Lease. If there are any inconsistencies between this Lease and the Master Lease, the Master Lease shall control and govern. Notwithstanding the foregoing, nothing in this Lease gives Tenant any direct or third-party interest in the Master Lease.

E. Authority. If Tenant is a legal entity, each individual executing this Lease on behalf of Tenant hereby represents and warrants that Tenant is a duly authorized and existing entity under Law, that Tenant has and is qualified to do business in the State where the Marina is located, that the entity has full right and authority to enter into this Lease, and that each person signing on behalf of the entity is authorized to do so. Tenant shall provide Landlord on demand with such evidence of such authority as Landlord shall reasonably request. This Lease shall not be construed to create a partnership, joint venture or similar relationship or arrangement between Landlord and Tenant.

F. No Waiver. No waiver by Landlord or Tenant of any breach or default of any term, agreement, covenant or condition of this Lease shall be deemed to be a waiver of any other term, agreement, covenant or condition hereof or of any subsequent breach by Landlord or Tenant of the same or any other term, agreement, covenant or condition. Landlord's consent to or approval of any act by Tenant requiring Landlord's consent or approval shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any subsequent act of Tenant.

G. Governing Law/Waiver. This Lease shall be governed by the laws of the State where the Marina is located. LANDLORD AND TENANT WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY OF ANY CONTRACT OR TORT CLAIM, COUNTERCLAIM, CROSS-COMPLAINT, OR CAUSE OF ACTION IN ANY ACTION, PROCEEDING, OR HEARING BROUGHT BY EITHER PARTY AGAINST THE OTHER ON ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS LEASE.

H. Attorneys' Fees. If a lawsuit is brought by either party against the other for a breach or default under the terms of this Lease, the prevailing party shall be entitled to reasonable attorneys' fees. If Landlord utilizes the services of an attorney in an effort to enforce any of its rights under this Lease (other than in connection with a good faith dispute between Landlord and Tenant over a party's rights or obligation under this Lease) but such enforcement effort does not result in the bringing of legal action, Tenant shall immediately pay to Landlord upon demand the amount of such attorneys' fees incurred in such enforcement effort. If Landlord, without fault on Landlord's part, is made a party to any action instituted by Tenant or a third party against Tenant or by or against any person holding under or using the Premises by sublease or license of Tenant (where permitted under this Lease), or for the foreclosure of any lien for labor or material furnished to or for Tenant or any such other person, or otherwise arising out of or resulting from any act or omission of Tenant or of any such other person, Tenant shall indemnify, defend and hold Landlord harmless from any judgment rendered in connection therewith and all costs and expenses (including attorneys' fees) incurred by Landlord in connection with such action.

I. Time Periods. Except as otherwise expressly provided in this Lease, if the last day of any time period falls on a day that is not a business day, such time period shall be extended until the next succeeding business day. For the purposes of this Lease, "business day" means any day that is not a Saturday, Sunday, a Federal holiday, or the day after Thanksgiving Day. Time is of the essence of each and every provision of this Lease.

J. Confidentiality. Tenant acknowledges that the terms and conditions of this Lease are to remain confidential for Landlord's benefit, and may not be disclosed by Tenant to anyone, by any manner or means, directly or indirectly, without Landlord's prior written consent; however, Tenant may disclose the terms and conditions of this Lease if required by Law or court order, to its attorneys, accountants, employees and existing or prospective financial partners provided same are advised by Tenant of the confidential nature of such terms and conditions and agree to maintain the confidentiality thereof (in each case, prior to disclosure). Tenant shall be liable for any disclosures made in violation of this Section by Tenant or by any entity or individual to whom the terms of and conditions of this Lease were disclosed or made available by Tenant. The consent by Landlord to any disclosures shall not be deemed to be a waiver on the part of Landlord of any prohibition against any future disclosure.

K. Final Agreement; Other. The Section and paragraph captions contained in this Lease are for convenience only and shall not be considered in the construction or interpretation of any provision hereof. In this Lease, (i) the singular includes the plural and the plural includes the singular and the masculine gender includes the feminine and neuter and vice versa (ii) "or" means "and/or", (iii) "including" or "include" means "including without limitation", and (iv) unless otherwise specified, when exercising its right to approve or consent to an action, a party is entitled to withhold or condition such consent or approval in its sole and absolute discretion. This Lease may be executed in one or more counterparts, including facsimile signatures (e.g., pdf. files transmitted by email) or digital signatures affixed to electronic counterpart signature pages using digital signature software that electronically captures, or allows a signatory to adopt, an identifying mark as such person's signature to this Lease (e.g., Docusign®). This Lease shall be binding upon, and inure to the benefit of the parties hereto, their heirs, executors and administrators and permitted successors, assigns, heirs and devisees. If any part of this Lease shall be held unenforceable for any reason, the remainder of this Lease shall continue in full force and effect. If any provision of this Lease is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited. This Lease and the Exhibits attached to this Lease, which are hereby incorporated by reference, contain all of the agreements of the parties hereto with respect to any matter covered or mentioned in this Lease, and no prior agreement or understanding pertaining to any such matter shall be effective for any purpose. No provision of this Lease may be amended or added to except by an agreement in writing signed by the parties hereto or their respective successors in interest.

**19. Uniforms**. All Tenant's employees shall be dressed in uniforms appropriate for families when on the Property.

**20. Landlord's Right to Cancel**. Notwithstanding anything herein to the contrary, Landlord may, at Landlord's option, cancel and terminate this Lease at any time, for any reason or no reason at all and without penalty or fee, upon 30 days' written notice to Tenant.

**21. Golf Carts**. When on the Premises: (i) all operators of the Golf Cart shall have a valid driver's license; (ii) Tenant shall exercise reasonable care and not engage in any driving activities which could harm the Marina, Tenant, or others; (iii) neither Tenant nor any other operator of the Golf Cart shall use or consume drugs or alcohol while operating the Golf Cart; (iv) Tenant shall not use a cell phone or other handheld electronic device while operating the Golf Cart; (v) the number of passengers in the Golf Cart (including the Tenant) at any time shall not exceed the number of seats/seatbelts in the Golf Cart; (vi) all operators of the Golf Cart must follow both the Golf Cart Rules & Regulations and the Harbor Rules & Regulations (collectively, the "Golf Cart Rules"); and (vii) any additional Golf Cart(s) beyond those assigned to the Tenant in the Basic Lease Provisions are at Landlord's sole discretion to permit for Tenant use.

**22. Joint and Several Obligation**. If Tenant is comprised of more than one party or entity, the obligations imposed upon Tenant shall be joint and several obligations of all the parties and entities, and notices, payments and agreements given or made by, with or to any one person or entity shall be deemed to have been given or made by, with and to all of them.

**23. Affiliate Transfer.** Notwithstanding anything in this Lease to the contrary, Landlord hereby reserves the right to transfer and/or assign (in whole or in part) the rights, duties and obligations of Landlord under this Lease to any affiliate of Landlord without the consent or approval of Tenant. In the event of any such transfer and/or assignment (in whole or in part) to any such affiliate of Landlord, Landlord may continue to collect and receive all or any portion of the amounts payable hereunder by Tenant as agent for and on behalf of such affiliate-transferee/assignee and notify Tenant thereof in writing.

DocuSign Envelope ID: C5908772-EAD7-4932-8C68-C1310F1D2D4A

**24. State Specific Provisions**. Notwithstanding anything in this Lease to the Contrary, the following provisions shall control:

A. Radon Disclosure and Disclaimer. The following notification is required by Florida law and is provided for your information:

"Radon is a naturally occurring radioactive gas that, when it is accumulated in buildings in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida Additional information regarding radon and radon testing may be obtained from your country public health unit."

Landlord has not tested for Radon gas at the Marina and therefore, makes no representation regarding the presence or absence of such gas. Tenant hereby waives any and all actions against Landlord related to the presence of such gas.

[*Signature Page Follows*]

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

DocuSign Envelope ID: C5908772-EAD7-4932-8C68-C1310F1D2D4A

IN WITNESS WHEREOF, the parties have duly executed this Lease as of the last date set forth below following the parties' signatures.

**LANDLORD**:

**SHM LMC, LLC,**
a Delaware limited liability company

By: DocuSigned by: Carolina Corral
17373BE8E9A34D1...
(Signature)

Name: Carolina Corral

Title: RVP

**TENANT**:

**STARBOARD YACHT GROUP, LLC,**
a Florida limited liability company

By: DocuSigned by: Jake Stratmann
07B4E0C2BE1E466...
(Signature)

Name: Jake Stratmann

Title: Mgr member

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

**EXHIBIT A**

**FLOOR PLAN OF THE PREMISES**

(see attached)

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

DocuSign Envelope ID: C5908772-EAD7-4932-8C68-C1310F1D2D4A

## EXHIBIT B

### AUTHORIZATION AGREEMENT FOR PREAUTHORIZED PAYMENT

I (WE) HEREBY AUTHORIZE Landlord, its parent, affiliate or subsidiary, to initiate debit entries in the amount stated in the current lease agreement and in accordance with any and all lease renewals and/or account charges to my (our) checking account indicated below at the bank named below, hereinafter call BANK, to debit the same to such account. All withdrawals will be made on or after the 1st of each month.

BANK NAME: ______________________________________________

CITY: ______________________________ STATE: ____________ ZIP: ____________

ROUTING: ________________________ ACCOUNT NO: ________________________




This authorization is to remain in full force and effect until LANDLORD has received written notification from me (or either of us) of its terminations in such time and in such manner as to afford LANDLORD and BANK a reasonable opportunity to act on it.

NAME(S) ____________________________________

____________________________________

(PLEASE PRINT)

SIGNED: ____________________________________ DATE: ________________

SIGNED: ____________________________________ DATE: ________________

NOTE: ALL WRITTEN DEBIT AUTHORIZATIONS MUST PROVIDE THAT THE RECEIVER MAY REVOKE THE AUTHORIZATION ONLY BY NOTIFYING THE ORIGINATOR IN THE MANNER SPECIFIED IN THE AUTHORIZATION.

# EXHIBIT B

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

SAFE HARBOR
MARINAS

December 8, 2023

Starboard Yacht Group, LLC
Attn: Jake Stratmann
850 NE 3rd Street, Suite 208
Dania Beach, FL 33004
*Via e-mail:* jake@starboardyacht.com

RE: Notice of Intent to Terminate Commercial Lease Agreement

Dear Mr. Stratmann:

Reference is made to that certain Commercial Lease Agreement between SHM LMC, LLC ("Landlord") and Starboard Yacht Group, LLC ("Tenant") dated July 1, 2023 (the "Original Lease"), as well as to that certain First Amendment to Lease between Landlord and Tenant dated July 1, 2023 (the "Amended Lease") (collectively, the "Lease"), pursuant to which Landlord leased to Tenant Suite 215, comprising of approximately 528 square feet, in the building located at 2019 SW 20th Street, Fort Lauderdale, FL 33315 (the "Premises") at Safe Harbor Lauderdale Marine Center (the "Marina").

Pursuant to Section 20 of the Original Lease, please let this letter serve as the required thirty (30) days' notice to Tenant that Landlord is exercising its right to terminate the Lease. The Lease between Landlord and Tenant shall terminate as of January 7, 2024.

**As a result, please ensure the Premises is vacated and all personal property is removed from the Marina no later than January 7, 2024 (5:00 PM local Marina time).**

Thank you for your cooperation.

Sincerely,

Lazaro Roig | General Manager
Safe Harbor Lauderdale Marine Center

CC: Carolina Corral, Regional Vice President
Safe Harbor Marinas Legal Department

Filing # 199371645 E-Filed 05/29/2024 01:01:17 PM

**IN THE COUNTY COURT IN AND FOR BROWARD COUNTY, FLORIDA**

**CASE NO: COCE-24-017512**

SHM LMC, LLC,

Plaintiff,

vs.

STARBOARD YACHT GROUP, LLC,

Defendant.

_______________________________________/

**JOINT MOTION FOR ENTRY OF STIPULATED FINAL JUDGMENT FOR POSSESSION**

Plaintiff, SHM LMC, LLC, and Defendant, STARBOARD YACHT GROUP, LLC, hereby jointly move for the entry of a Stipulated Final Judgment for Possession, and in support thereof state as follows:

1. This is an action seeking possession of real property located at 2019 S.W. 20th Street, Suite 215, Fort Lauderdale, Florida 33315 (the "Premises").

2. The parties have settled this action pursuant to the terms of the Stipulation of Settlement and Entry of Final Judgment (the "Stipulation"), which Stipulation is attached hereto as **Exhibit "A."**

3. Pursuant to the Stipulation, the parties request that the Court enter the Stipulated Final Judgment for Possession, which is attached hereto as **Exhibit "B."**

4. The parties jointly request that the Court retains jurisdiction to enforce the terms of the Stipulation.



*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 05/29/2024 01:01:15 PM.****

Dated: May 29, 2024

**Counsel for Plaintiff:**

**AKERMAN LLP**
Three Brickell City Centre
98 S.E. 7th Street, Suite 1100
Miami, FL 33131
Phone (305) 374-5600

By: *_/s/ James A. Bombulie_*
James A. Bombulie, Esq.
Florida Bar No.: 025749

**Counsel for Defendant:**

**VALCOURT AND ASSOCIATES LLC**
850 N.E. Third Street, Suite 208
Dania, FL 33004
Phone (305) 763-2891

By: *_/s/ Matthew J. Valcourt_*
Matthew J. Valcourt, Esq.
Florida Bar No.: 0088791

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

# EXHIBIT A

NOT AN OFFICIAL COPY - PUBLIC RECORDS - NOT AN OFFICIAL COPY

**IN THE COUNTY COURT IN AND FOR BROWARD COUNTY, FLORIDA**

**CASE NO: COCE-24-017512**

SHM LMC, LLC,

Plaintiff,

vs.

STARBOARD YACHT GROUP, LLC,

Defendant.

_______________________________________/

**STIPULATION OF SETTLEMENT AND ENTRY OF FINAL JUDGMENT**

**THIS STIPULATION OF SETTLEMENT AND ENTRY OF FINAL JUDGMENT** (the "Stipulation") is entered into on this 28th day of May, 2024 by and between Plaintiff, SHM LMC, LLC ("Plaintiff" or "Landlord"), and Defendant, STARBOARD YACHT GROUP, LLC ("Defendant" or "Tenant") (collectively, with Plaintiff, the "Parties"), and in support thereof the Parties state as follows:

1. This is an action seeking possession of real property located at 2019 S.W. 20th Street, Suite 215, Fort Lauderdale, Florida 33315 (the "Premises").

2. The Parties agree that Defendant shall vacate and deliver the Premises to Plaintiff in the condition required under the Lease, on or before June 30, 2024. The Parties shall conduct a walk-through of the Premises beginning at 4 p.m. on June 30, 2024, or a date and time otherwise agreed to by the Parties, at the conclusion of which Defendant shall return the keys to the Premises to Plaintiff.

3. In consideration for Plaintiff allowing Defendant to remain in possession of the Premises up through and including June 30, 2024, Defendant shall make the following payment to Plaintiff:

a. Simultaneously with the execution of this Stipulation, Defendant shall pay via wire transfer to Plaintiff the amount of eighteen thousand two hundred twenty-six dollars and sixty-eight cents ($18,226.68).

4. Defendant hereby stipulates and unconditionally consents to the filing of the Joint Motion for Entry of Stipulated Final Judgment and the entry of the Stipulated Final Judgment for Possession against Defendant, which documents are attached hereto as composite **Exhibit "1,"** with the Court to retain jurisdiction to enforce the terms of the Stipulation. Defendant hereby waives any and all defenses or objections that it may have to the entry of the Stipulated Final Judgment for Possession or the issuance of the Writ of Possession, and hereby waives any notice or hearing on same.

5. When Defendant vacates and surrenders the Premises to Plaintiff, Defendant shall remove all personal property, furniture and equipment (other than fixtures and trade fixtures, i.e., Defendant may not remove any item from the Premises which is affixed to any portion of the Premises) from the Premises on or before the date Defendant surrenders possession of the Premises to Plaintiff. Any personal property or equipment which remains in the Premises after June 30, 2024, shall be deemed abandoned by Defendant (the "Abandoned Property"), and Defendant agrees to waive all of its rights with respect to the Abandoned Property, including but not limited to its right to reclaim the Abandoned Property pursuant to Florida Statutes, Chapter 715 (including but not limited to waiver of any notice, statutory or otherwise, to reclaim same). The Parties agree that all Abandoned Property, at the option of Plaintiff may be kept, appropriated, sold, stored, destroyed, or otherwise disposed of by Plaintiff (regardless of the value of the Abandoned Property), that all proceeds shall be retained by Plaintiff and be the sole property of Plaintiff, and that Plaintiff shall not be liable to Defendant in any way with respect to the Abandoned Property.

6. The Parties agree that this Stipulation: (i) shall only terminate Defendant's right to possession of the Premises under the Commercial Lease Agreement for the Premises dated July 1, 2023, as amended (the "Lease"), which shall remain in full force and effect and has not been modified or amended, except as provided herein, and Defendant shall remain responsible for payment of rent and all sums due under the Lease to Plaintiff in accordance with the Lease and the terms of this Stipulation; and (ii) shall not waive, terminate, or extinguish the Plaintiff's right and entitlement to pursue amounts or damages due and owing to Plaintiff pursuant to the Lease, Florida law or otherwise. Additionally, this Stipulation shall have no effect on the federal court lawsuit captioned, *Starboard Yacht Group, LLC v. M/V Octopussy*, Case No. 0:23-cv-61696-AHS, pending in the United States District for the South District of Florida (the "Federal Court Action"), nor shall this Stipulation be construed as a waiver, termination or extinguishment of any the parties claims or defenses in the Federal Court Action, and the parties reserve all rights with respect to the subject matter of the Federal Court Action.

7. Defendant and its managers, members, employees, agents, attorneys, representatives, affiliates, predecessors, successors and assigns (the "Defendant Group") hereby release, remise, acquit, satisfy and forever discharge the Plaintiff, and its officers, directors, shareholders, employees, agents, attorneys, representatives, affiliates, predecessors, successors and assigns (the "Plaintiff Group") of and from any and all claims, demands, debts, liabilities, defaults, actions, suits, contracts, promises and accounts whatsoever, arising from or relating to the Lease, the Premises, and the Defendant's occupancy of the Premises, which the Defendant Group ever had, now has or which any successor or assign of the Defendant Group hereinafter can, shall or may have against the Plaintiff Group from the beginning of time through the date of this Stipulation.

8. Defendant agrees that in the event it shall voluntarily commence any proceeding or file any petition under any bankruptcy, insolvency or similar law, or seek liquidation or reorganization of its property, or file any answer admitting jurisdiction of the court or the material allegations of any involuntary petition filed against it in any bankruptcy, insolvency or similar proceeding, or has taken against it in any court pursuant to state or federal statutes, a petition in bankruptcy or insolvency, reorganization, or appointment or a receiver or trustee; or Defendant petitions for or enters into an arrangement for the benefit of its creditors or makes an assignment for the benefit of its creditors, then Defendant agrees that it has no equity in the Premises, that the Premises are not necessary for and will have no impact upon a potential reorganization, that it is unable to provide adequate protection to Plaintiff in respect of Plaintiff's interest in the Premises, and that Plaintiff is and will be entitled to an order granting stay relief in any bankruptcy of Defendant.

9. Defendant hereby represents and warrants that it is the sole party occupying the Premises, and it has not sublet, assigned, encumbered or licensed any portion of its interest in the Premises to any person or entity.

10. Each party hereto represents and warrants that it is authorized to enter into this Stipulation on behalf of its respective entity and to bind said entity with respect to the Stipulation and any transaction contemplated by or occurring under the provisions of this Stipulation.

11. Should Defendant vacate and surrender possession of the Premises to Plaintiff on or before June 30, 2024 as set forth in this Stipulation, the Parties agree that they shall each bear their own attorneys' fees and costs relating to this Stipulation and the above-captioned lawsuit. However, should Defendant fail to vacate and surrender possession of the Premises to Plaintiff on or before June 30, 2024, then the Parties agree that Plaintiff shall be entitled to recover its attorneys' fees and costs relating to this Stipulation and the above-captioned lawsuit upon the

filing of a motion with the Court. Additionally, if any party hereto seeks to otherwise enforce the terms hereof or declare rights hereunder, the prevailing party in such action shall be entitled to its reasonable fees (including, but not limited to, fees for attorneys, paralegals, appraisals and/or other experts) and costs of suit.

12. The Parties hereby acknowledge that they fully understand the terms of this Stipulation; have entered into same voluntarily; and have had the advice of counsel in so doing.

13. This Stipulation may be amended or modified only by a written agreement signed by all Parties.

14. The Parties agree that the Court shall retain jurisdiction to enforce the terms of this Stipulation.

15. Time is of the essence with respect to each and every obligation set forth in this Stipulation.

16. This Stipulation may be executed by facsimile or electronic signature and in one or more counterparts, each of which shall be deemed an original, but all of which together constitute one and the same instrument and shall become a binding agreement when one or more counterparts have been signed by each of the Parties and delivered to the other Parties. Delivery of an executed counterpart by facsimile, portable document format (.pdf), or other electronic means will be deemed to be delivery of an original in all cases. This Stipulation may be executed by use of electronic signatures, as determined by Florida's Uniform Electronic Transaction Act, Section 668.50, F.S. Signatures on this Stipulation which are transmitted electronically shall be valid for all purposes; provided, however, any party shall deliver an original signature on this Settlement Agreement to the other party upon request.

**Plaintiff:**

**SHM LMC, LLC**

By: John Ray

Its: Authorized Signatory

**Defendant:**

**STARBOARD YACHT GROUP, LLC**

By:____________________

Its:____________________

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

**Plaintiff:**

**SHM LMC, LLC**

______________________________

By:______________________________

Its:______________________________

**Defendant:**

**STARBOARD YACHT GROUP, LLC**

DocuSigned by:
37D4E0C2DE1E466...
______________________________

By: Charles J. Stratmann

Its: Managing Member

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

# EXHIBIT "1"

**IN THE COUNTY COURT IN AND FOR BROWARD COUNTY, FLORIDA**

**CASE NO: COCE-24-017512**

SHM LMC, LLC,

Plaintiff,

vs.

STARBOARD YACHT GROUP, LLC,

Defendant.

_______________________________________/

**JOINT MOTION FOR ENTRY OF STIPULATED FINAL JUDGMENT FOR POSSESSION**

Plaintiff, SHM LMC, LLC, and Defendant, STARBOARD YACHT GROUP, LLC, hereby jointly move for the entry of a Stipulated Final Judgment for Possession, and in support thereof state as follows:

1. This is an action seeking possession of real property located at 2019 S.W. 20th Street, Suite 215, Fort Lauderdale, Florida 33315 (the "Premises").

2. The parties have settled this action pursuant to the terms of the Stipulation of Settlement and Entry of Final Judgment (the "Stipulation"), which Stipulation is attached hereto as **Exhibit "A."**

3. Pursuant to the Stipulation, the parties request that the Court enter the Stipulated Final Judgment for Possession, which is attached hereto as **Exhibit "B."**

4. The parties jointly request that the Court retains jurisdiction to enforce the terms of the Stipulation.

Dated: May 29, 2024

**Counsel for Plaintiff:**

**AKERMAN LLP**
Three Brickell City Centre
98 S.E. 7th Street, Suite 1100
Miami, FL 33131
Phone (305) 374-5600

By: *_/s/ James A. Bombulie*
James A. Bombulie, Esq.
Florida Bar No.: 025749

**Counsel for Defendant:**

**VALCOURT AND ASSOCIATES LLC**
850 N.E. Third Street, Suite 208
Dania, FL 33004
Phone (305) 763-2891

By: *_/s/ Matthew J. Valcourt_*
Matthew J. Valcourt, Esq.
Florida Bar No.: 0088791

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

**IN THE COUNTY COURT IN AND FOR
BROWARD COUNTY, FLORIDA**

**CASE NO: COCE-24-017512**

SHM LMC, LLC,

Plaintiff,

vs.

STARBOARD YACHT GROUP, LLC,

Defendant.

______________________________________/

**STIPULATED FINAL JUDGMENT FOR POSSESSION**

**THIS CAUSE** having come before this Court upon the agreement of Plaintiff, SHM LMC, LLC, and Defendant, STARBOARD YACHT GROUP, LLC, and the Court having reviewed the file, having been informed of the agreement of the parties, and being otherwise fully advised in the premises, it is hereby,

**ORDERED AND ADJUDGED** that:

1. Plaintiff shall recover from Defendant, STARBOARD YACHT GROUP, LLC and ALL TENANTS IN POSSESSION, the premises located at 2019 S.W. 20th Street, Suite 215, Fort Lauderdale, Florida 33315, for which let execution issue on July 1, 2024.

2. The Court retains jurisdiction of this matter to enter any further orders that may be necessary.

**DONE AND ORDERED** in Chambers in Broward County, Florida, this ____ day of May, 2024.

______________________________
COUNTY COURT JUDGE

Copies furnished to:

James Bombulie, Esq.
Matthew Valcourt, Esq.

NOT AN OFFICIAL COPY

# EXHIBIT B

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

**IN THE COUNTY COURT IN AND FOR BROWARD COUNTY, FLORIDA**

**CASE NO: COCE-24-017512**

SHM LMC, LLC,

Plaintiff,

vs.

STARBOARD YACHT GROUP, LLC,

Defendant.

______________________________________/

**STIPULATED FINAL JUDGMENT FOR POSSESSION**

**THIS CAUSE** having come before this Court upon the agreement of Plaintiff, SHM LMC, LLC, and Defendant, STARBOARD YACHT GROUP, LLC, and the Court having reviewed the file, having been informed of the agreement of the parties, and being otherwise fully advised in the premises, it is hereby,

**ORDERED AND ADJUDGED** that:

1. Plaintiff shall recover from Defendant, STARBOARD YACHT GROUP, LLC and ALL TENANTS IN POSSESSION, the premises located at 2019 S.W. 20th Street, Suite 215, Fort Lauderdale, Florida 33315, for which let execution issue on July 1, 2024.

2. The Court retains jurisdiction of this matter to enter any further orders that may be necessary.

**DONE AND ORDERED** in Chambers in Broward County, Florida, this ____ day of May, 2024.

______________________________
COUNTY COURT JUDGE

Copies furnished to:

James Bombulie, Esq.
Matthew Valcourt, Esq.

NOT AN OFFICIAL COPY